In the Matter of BRIGHT HOMES, INC., Appellant, against ROBERT C. WEAVER, as State Rent Administrator, Respondent.

Fourth Department, March 4, 1959.

*George E. Gasner* for appellant.

*Nathan Heller* (*Beatrice Shainswit* of counsel), for respondent.

BASTOW, J. Petitioner-landlord appeals from an order denying its application to have a certain amendment (No. 70) of the State Rent and Eviction Regulations annulled. This amendment to section 9 (subd. 17, par. [b]) thereof in substance provided that subject to certain conditions housing accommodations which became vacant after July 1, 1957 in the City of Lackawanna, Erie County, should continue to be subject to rent control. The problem presented is whether the city, acting pursuant to powers granted by the Legislature, legally elected in 1957 to forestall the decontrol of all housing accommodations or only occupied accommodations with the resulting decontrol of accommodations vacant or to become vacant.

An intelligent consideration of the problem presented requires a brief consideration of the legislation enacted in the course of the gradual decontrol of rents for housing accommodations. In 1955 the Legislature (L. 1955, ch. 685), pursuant to recommendations of the Temporary State Commission to Study Rents and Rental Conditions (N. Y. Legis. Doc., 1955, No. 73, p. 13), amended in various respects the State Residential Rent Law. (L. 1946, ch. 274, as amd.) Insofar as here material, that amendment added a new subdivision 3 to section 12 of the

law. Thereby rent controls were terminated after June 30, 1955 in any city or town in some 17 named counties, including Erie County. The governing body of any such city or town was empowered, however, to forestall such decontrol "with respect to all or any particular class of such accommodations", except that in Erie and Niagara Counties controls could not be continued on one- and two-family houses occupied in whole or in part by the owner.

The Temporary State Commission made another report in 1957. (N. Y. Legis. Doc., 1957, No. 22.) Therein it was recommended (p. 21), among other things, that controlled housing accommodations vacated on or after July 1, 1957, except in New York City and certain accommodations in Westchester County, be decontrolled when so vacated. There were other exceptions here immaterial. Such decontrol could similarly be forestalled in any city or town before June 30, 1957.

These recommendations were implemented by further amendments of the State Residential Rent Law. (L. 1957, ch. 755.) In substance, as we shall see, the statutory scheme provided for two types of decontrol. The first was similar to the enactment of 1955 and provided for what might be called blanket decontrol. The second and new type, which represented a less painful method from the viewpoint of the tenant, was vacancy decontrol. Thus, as to so-called blanket decontrol, paragraph (d) of subdivision 3 of section 12 was added to provide that housing accommodations subject to rent control on June 30, 1957, in any city or town in three named counties, one of which was Erie, should be terminated. The provision was continued that governing bodies of cities and towns might forestall such decontrol by resolution adopted prior to June 30, 1957.

The provision for vacancy decontrol was accomplished by adding a new paragraph (k) to subdivision 2 of section 2 of the law. Subdivision 2 defined the words "Housing accommodation" and the several paragraphs therein consisted of described accommodations that by a process of exceptions did not constitute such accommodations. Paragraph (k), insofar as here material, provided that the following should not fall within the meaning of "housing accommodation" as used in the statute: "housing accommodations * * * which are or become vacant on or after July first, nineteen hundred fifty-seven * * * and provided, further, however that this exemption shall become effective in any city or town subject to the provisions of subdivision five of section twelve hereof providing for the continuance of control with respect to such housing accommodations".

Subdivision 5 of section 12, therein referred to, stated that "Notwithstanding any inconsistent provision of this act" local governing bodies were empowered to elect—by resolution adopted prior to June 30, 1957 and transmitted to the commission—that the provisions of paragraph (k), above quoted, should not apply in such municipality. In that event accommodations vacant, or thereafter to become vacant, should continue to be subject to control.

It is against this statutory background that we consider the facts in this proceeding. In June, 1957 the Common Council of Lackawanna adopted a resolution. This commenced by a declaration "that an emergency exists in the city * * * due to the shortage of housing accommodations". Such a declaration was required by section 12 (subd. 3, par. [d]) relating to blanket decontrol but was not necessary under section 12 (subd. 5) to forestall vacancy decontrol. The resolution further provided that the city "elects pursuant to the statutes in such case made and provided to continue the application of rent control on all housing accommodations except 1, 2 and 3-family houses whether or not occupied by the landlord."

Pursuant to the scheme of the statute this resolution was sent to the State Rent Commission. The State Administrator wrote the City Clerk that "Since the Common Council * * * did not adopt a resolution pursuant to Section 12 (5) of the Act, the vacancy decontrol provision [§ 2 (2) (k) of the Act] applies in the city of Lackawanna." The Administrator issued Amendment No. 66 to the regulations on July 9, 1957 and therein implemented the resolution to continue controls in Lackawanna as to housing accommodations. However, the city was not included in the amendment as one that had elected that vacancy control should continue.

Let us pause at this point and consider the effect of the city's resolution. Following the 1957 amendments a city or town in Erie County was given several choices. First, it could take no action. Thereupon blanket decontrol under the one provision and vacancy decontrol under the other by their self-executing provisions would result in complete decontrol of all housing accommodations. Second, the municipality could elect pursuant to section 12 (subd. 5) to continue vacancy controls and take no action under section 12 (subd. 3, par. [d]) to forestall all rent decontrols. In the practical operation of rent control at the level of local government this would be unlikely because decontrol, for obvious reasons, usually commences with the abolition of controls upon vacant accommodations. It is

apparent that the impact thereof is less painful to prospective tenants than to permit landlords to raise rents for occupied accommodations. The third choice of the municipality would be to act under section 12 (subd. 3, par. [d]) to forestall decontrol of "housing accommodations subject to rent control".

The Rent Administrator argues persuasively, at first blush, and apparently Special Term adopted the reasoning, that if the city elected "to continue the application of rent control on all housing accommodations" a fortiori it elected to prevent decontrol of vacant occupancies. This reasoning is patently fallacious because it deprived the municipality that desired to decontrol vacant accommodations and forestall decontrol of occupied accommodations of a method of procedure. In other words, if every municipality simply adopted a resolution providing for the continuance of rent control on all accommodations and ignored its right to elect to continue vacancy controls there would be no procedure for the other municipality that elected (1) to continue controls on occupied accommodations but (2) desired to discontinue controls upon vacant accommodations. It is true, as contended by the Administrator, that section 12 (subd. 3, par. [d]) provides for the termination of rent control "to the extent specified in such resolution." If the resolution had provided that the city elected to continue controls upon both vacant and occupied accommodations it obviously would have constituted a sufficient election under both statutory provisions. But the naked election to continue rent control with a complete disregard of the city's wishes as to vacant accommodations resulted in an election to only continue controls upon occupied accommodations.

We pass to subsequent happenings. On October 10, 1957— more than three months after the expiration of the statutory time for action—the Common Council passed another resolution. It was recited in the preamble in substance that it was the intention of the council to elect to exclude the city from the operations of the provisions of both sections 12 (subd. 3, par. [d]) and 2 (subd. 2, par. [k]) of the statute. It was resolved that the prior resolution be amended "to clarify the intent" of the council and that such resolution was amended *nunc pro tunc* to provide that the council elected to exclude the city from the operation of the decontrol provisions of section 12 (subd. 3, par. [d]) and from the vacancy decontrol provisions of section 2 (subd. 2, par. [k]). Thereafter, the Administrator acted thereon and by Amendment No. 70 included the city as one to which vacancy decontrol should not apply.

Thereafter, appellant filed a protest with respondent which was denied by the latter. In an opinion the Administrator stated that it was unnecessary to speculate on the question whether his first amendment (No. 66) correctly reflected the intention of the council's first resolution because the second resolution of October, 1957 stated precisely what the council meant by its first enactment. In this court the Administrator follows this reasoning and presents a second and more elaborate contention. It is claimed that upon receipt of the first resolution it was misread by the Administrator; that through such error its plain intent was not understood with the resulting omission of the city from the group that had elected to forestall vacancy decontrol.

We cannot agree with either contention. It must be admitted that the scheme of the statutory amendments is confusing. (Cf. Message of the Governor on approving L. 1957, ch. 755.) Upon study, however, it is plain that to enable a city such as Lackawanna to continue all controls it was required to elect by resolution in such a manner as to clearly show that it was forestalling decontrol pursuant to both sections 12 (subd. 3, par. [d] and 12 (subd. 5). Otherwise stated, the municipality desiring to continue only control of occupied accommodations would elect under section 12 (subd. 3, par. [d]). Its failure to act under section 12 (subd. 5) would result in decontrol of vacant accommodations. If the Administrator had undertaken to treat every election to continue all controls as one to continue vacancy controls, the careful governing body following the provisions of the statute would have had its action construed as an election to continue vacancy controls when such was not its intention.

A study of the amendments to the State Rent and Eviction Regulations shows that the Rent Commission had a clear understanding of the distinction between the two types of decontrol. Section 9 of the regulations provides for housing accommodations not subject to rent control. Following the 1955 amendments, heretofore discussed, paragraph 15 was added to the section as of July 1, 1955. Therein it appeared that with certain specified exceptions, including the City of Lackawanna, housing accommodations in 17 named counties were decontrolled. Following the 1957 amendments to the statute paragraph 15 was amended. The commission stated that this had been done " by reason of the provision for statutory decontrol in * * * Erie (County) on and after July 1, 1957 " unless forestalled by election of the governing body of any city or town therein.

At the same time the commission added paragraph 17 to section 9. The body stated that this had "been added by reason of the provision for statutory decontrol elsewhere than in the City of New York, where housing accommodations are or become vacant."

An examination of subsequent amendments to paragraphs 15 and 17 of section 9 discloses the clear distinction made by the commission as to elections made under section 12 (subd. 3, par. [d]) and section 12 (subd. 5). Thus, the City of Hudson in Columbia County apparently filed an election to forestall decontrols of housing accommodations until July 1, 1958. It was listed in paragraph 15 to that effect. It may be assumed that no election was filed as to vacancy control. Therefore, an examination of paragraph 17 shows that vacancy controls no longer apply in that city.

There was no administrative error or confusion on the part of the Administrator in construing the election made by Lackawanna. It could only be construed as an election to continue controls in general but not specifically to continue vacancy controls as required by the statute.

It is further concluded that the city's failure to make a proper election may not be remedied by either *nunc pro tunc* action or the adoption of a clarifying resolution stating the intention of the council when the original resolution was adopted. It is suggested that such resolution should be liberally construed. The statutory provision consisted of grants to certain governing bodies of towns and cities of the power vested in the State to determine whether or not rent controls should be continued. The rule is "that grants of power are strictly construed [and] such provisions are generally mandatory in the sense that the power granted can be exercised only in strict conformity with the statutory conditions therefor." (3 Sutherland, Statutory Construction, § 5811.)

The power to construe the laws is vested in the courts and not in a legislative body. Hence such a body "has no controlling power to retroactively declare that an existing statute shall receive a given construction when such a construction is contrary to that which the statute would ordinarily have received." (McKinney's Cons. Laws of N. Y., Book 1, Statutes, § 75 and cases therein cited; see, also, 2 Sutherland, Statutory Construction, § 5110.)

The Administrator relies upon *Matter of Chatlos* v. *McGoldrick* (302 N. Y. 380). There it appeared that when the State took over rent control in 1950 from the Federal Government

it authorized the Rent Commission to establish maximum rents. The latter, pursuant to the intent of the enabling act, adopted a regulation that maximum rents established by local law should prevail only if lower than those prescribed under Federal control. In the case before the court the unusual situation was presented of a locally fixed rent being higher than the Federal maximum. The Legislature in 1951 had taken cognizance of such a situation and amended the 1950 act to show that local maximum rents were not to prevail when higher than the Federal rent and stated that it was the intent to clarify the provisions of the 1950 act. The court expressly recognized the above-stated rule and wrote (p. 388) " that the Legislature cannot come back a year later and by a new law, control the interpretation of the law it passed a year earlier." It was said, however, that such a subsequent statement was " entitled to very great weight."

The instant case is entirely different. The city was given two grants of power exercisable before a specified date. A fair interpretation of its exercise of such grants leads to the conclusion that it elected only to continue controls on occupied accommodations. It failed to exercise the power as to vacant occupancies. Thereby, the latter became decontrolled. The October resolution was an attempt to exercise the power after the grant of power had expired. It was without force and effect and can be given no weight when considering the legal rights of appellant. It appears that the latter had proceeded to renovate and rehabilitate vacant accommodations relying on a regulation which had been in effect for more than three months providing that such accommodations had been decontrolled.

The attempt to take action *nunc pro tunc* was to no avail. Generally speaking, when action has been taken but is improperly evidenced, further action may be taken to remedy the defect. But a fact cannot be recorded as of a prior date when the fact did not then exist. (Cf. *Merrick* v. *Merrick,* 266 N. Y. 120, 122.)

The order appealed from should be reversed, the determination of the Administrator annulled and so much of Amendment No. 70 as applies to the City of Lackawanna set aside.

All concur. Present — McCurn, P. J., Williams, Bastow, Goldman and Halpern, JJ.

Final order reversed, with $50 costs and disbursements, determination of the Administrator annulled and so much of Amendment No. 70 as applies to the City of Lackawanna set aside,