# SUPREME COURT OF THE STATE OF NEW YORK
## *Appellate Division, Fourth Judicial Department*

**1211**
**CA 11-00675**
PRESENT: CENTRA, J.P., FAHEY, GREEN, AND GORSKI, JJ.

---

JAMES SQUARE ASSOCIATES LP, MOHAWK GLEN
ASSOCIATES, LLC, PIONEER FULTON SHOPPING
CENTER, LLC, PIONEER MANAGEMENT GROUP, LLC,
AND WATERFRONT ASSOCIATES, LLC,
PLAINTIFFS-RESPONDENTS,

V                                          OPINION AND ORDER

DENNIS MULLEN, COMMISSIONER, NEW YORK STATE
DEPARTMENT OF ECONOMIC DEVELOPMENT, AND JAMIE
WOODWARD, COMMISSIONER, NEW YORK STATE
DEPARTMENT OF TAXATION AND FINANCE,
DEFENDANTS-APPELLANTS.
(APPEAL NO. 2.)

---

ERIC T. SCHNEIDERMAN, ATTORNEY GENERAL, ALBANY (OWEN DEMUTH OF
COUNSEL), FOR DEFENDANTS-APPELLANTS.

BOND, SCHOENECK & KING, PLLC, SYRACUSE (JONATHAN B. FELLOWS OF
COUNSEL), FOR PLAINTIFFS-RESPONDENTS.

---

Appeal from an order and judgment (one paper) of the Supreme
Court, Onondaga County (John C. Cherundolo, A.J.), entered February 9,
2011. The order and judgment granted the motion of defendants for
leave to renew and, upon renewal, adhered to the court's order and
judgment entered June 22, 2010, and further declared that the August
11, 2010 "clarification" of the 2009 amendments to the Empire Zones
Program is, as applied to plaintiffs, an unconstitutional taking of
plaintiffs' property.

It is hereby ORDERED that the order and judgment so appealed from
is unanimously affirmed without costs.

Opinion by GREEN, J.: Plaintiffs are business enterprises that
at one time were certified as eligible to receive benefits pursuant to
the New York State Empire Zones Act ([Empire Zones Act] General
Municipal Law § 955 *et seq.*). In April 2009, as part of the 2009-2010
budget legislation, the Governor signed into law amendments to the
Empire Zones Act that altered certain eligibility criteria for
business enterprises and directed defendant Commissioner of the New
York State Department of Economic Development (DED Commissioner) to
conduct a review of all business enterprises receiving benefits (*see* §
959 [a] [5], [6]; [w]). As the result of that review, the DED
Commissioner revoked the certification of each plaintiff, effective

January 1, 2008.  We agree with defendants that the Legislature intended that the pertinent 2009 amendments to the Empire Zones Act would apply retroactively to January 1, 2008.  We agree with plaintiffs and Supreme Court, however, that such retroactive application unconstitutionally deprived plaintiffs of their property interests without due process.

I

In 1986 the Legislature enacted the Empire Zones Act "to stimulate private investment, private business development and job creation" in economically impoverished areas (General Municipal Law § 956).  Toward that end, the State offered certain incentives to encourage the development of new businesses and the expansion of existing businesses in such economically impoverished areas, designated as Empire zones (*see id.*; § 957 [d]).  Those incentives include various tax credits for investment and job creation (*see e.g.* Tax Law § 606 [j], [j-1], [k], [*l*]; § 1456 [d], [o], [p]), which are available to business enterprises that the DED Commissioner has certified as eligible to receive such benefits (*see* General Municipal Law § 959 [a]).  Prior to the 2009 amendments, the DED Commissioner was authorized to revoke the certification of participating business enterprises on various grounds, and the effective date of such decertification was "the date determined to be the earliest event constituting grounds for revoking certification" (*id.*).

In an effort to ensure that those business enterprises benefitting from the Empire Zones Program were meeting the investment and employment goals of the program, the Legislature amended General Municipal Law § 959 (a) in April 2009 to revise the eligibility criteria for businesses receiving Empire zones' benefits.  Pursuant to section 959 (a) (v) (5) of the amended statute, the DED Commissioner is authorized to revoke the certification of a business enterprise upon a finding, inter alia, that

> "the business enterprise . . . caused individuals to transfer from existing employment with another business enterprise with similar ownership and located in New York state to similar employment with the certified business enterprise or if the enterprise acquired, purchased, leased or had transferred to it real property previously owned by an entity with similar ownership, regardless of form of incorporation or organization . . ."

That provision was intended to curb a practice colloquially known as "shirt-changing," which creates the illusion that a business enterprise is creating jobs and making investments when it does not in fact provide tangible economic benefits to the Empire zone where the business is operating.  The amended statute also added a cost-benefit criterion and permitted the DED Commissioner to revoke a certification upon finding that:

> "the business enterprise has failed to provide

economic returns to the state in the form of total
remuneration to its employees (i.e. wages and
benefits) and investments in its facility greater
in value to the tax benefits the business
enterprise used and had refunded to it" (General
Municipal Law § 959 [a] [v] [6]).

The same legislation added a new subdivision (w) to section 959,
which directed the DED Commissioner to conduct a review during 2009 of
all certified business enterprises to determine whether they should be
decertified pursuant to the "shirt-changing" provision or the cost-
benefit criterion.  If decertification was not warranted, the DED
Commissioner was to issue an Empire zones' retention certificate.  On
the other hand, if the DED Commissioner determined that the business
enterprise should be decertified pursuant to the "shirt-changing"
provision or the cost-benefit criterion, i.e., subparagraph (5) or (6)
of section 959 (a), the certification of the business enterprise would
be revoked.

At the same time that it amended article 18-B of the General
Municipal Law, the Legislature also amended several Tax Law provisions
applicable to carryovers of Empire zones' tax credits (see L 2009, ch
57, part S-1, §§ 11-22).  Each of the pertinent Tax Law amendments
provided in essence that "[a]ny carry over of a credit from prior
taxable years will not be allowed if an [E]mpire zone retention
certificate is not issued pursuant to [General Municipal Law § 959
(w)] to the [E]mpire zone enterprise which is the basis of the credit"
(id. at § 11).

The legislation further provided that the pertinent amendments to
General Municipal Law § 959 would "take effect immediately" (id. at §
44) but specified that the Tax Law amendments applicable to carryover
tax credits were to "apply to taxable years beginning on or after
January 1, 2008" (id. at § 44 [a]).  The Governor signed the
legislation on April 7, 2009, and on April 15, 2009 the Department of
Taxation and Finance issued a memorandum advising businesses that they
must obtain an Empire zones' retention certificate and attach that
certificate to their tax returns in order to receive credits for tax
years beginning on or after January 1, 2008.  The DED Commissioner
contemporaneously promulgated a regulation providing that "[t]he
effective date of decertification [pursuant to the pertinent statutory
amendments] shall be January 1, 2008" (5 NYCRR 11.9 [c] [2]).

**II**

Upon the reviews conducted by the DED Commissioner, the
certifications of plaintiffs Pioneer Fulton Shopping Center, LLC and
Pioneer Management Group, LLC were revoked based upon the "shirt-
changing" provision, those of plaintiffs James Square Associates LP
(James Square) and Waterfront Associates, LLC were revoked based upon
the cost-benefit criterion, and the certification of plaintiff Mohawk
Glen Associates, LLC was revoked based upon both the "shirt-changing"
provision and the cost-benefit criterion.  The DED Commissioner
notified each plaintiff that the effective date of the revocations was

January 1, 2008.  With the exception of James Square, all of the plaintiffs took administrative appeals to the empire zones designation board (EZDB) from the determinations revoking their certifications (*see* General Municipal Law § 960 [a]).  The EZDB upheld each of the determinations, including the one revoking the certification of James Square despite the absence of an administrative appeal.

### III

Plaintiffs commenced the instant action during the pendency of the administrative appeals.  Plaintiffs do not contend that they meet the revised eligibility criteria set forth in the amended statute or that their certification of eligibility to receive Empire zones' benefits was improperly revoked.  Rather, plaintiffs challenge the effective date of those revocations and the retroactive application of the revised criteria to January 1, 2008.  Plaintiffs thus sought, inter alia, judgment declaring that the amendments to the statute set forth in paragraphs (5) and (6) of General Municipal Law § 959 (a) (v) may be applied prospectively only, and not retroactively to January 1, 2008.

Plaintiffs moved and defendants cross-moved for summary judgment. In support of their motion, plaintiffs submitted a portion of the 2009-2010 budget bill proposed by the Governor that expressly provided that the decertification of a business enterprise pursuant to the review conducted by the DED Commissioner under General Municipal Law § 959 (w) would be effective for the taxable year beginning January 1, 2008.  Plaintiffs contended that, inasmuch as the Legislature declined to enact that portion of the proposed bill, it intended that decertification would be prospective.  Plaintiffs also submitted affidavits from their officers or members asserting that they had closed their books on 2008 prior to receiving notice in mid-2009 that their certifications had been revoked, and that they were thereafter assessed additional taxes that they had not anticipated.

In support of their cross motion, defendants submitted an affidavit from the Director of the Empire Zones Program who asserted that, both before and after the 2009 amendments, General Municipal Law § 959 (a) provided that the effective date of decertification was the " 'date determined to be the earliest event constituting grounds for revoking certification,' " and that the pertinent amendments to the Tax Law in the 2009-2010 budget bill applied to tax years beginning in 2008.  The Director further asserted that, at the time the certifications were revoked, the most current date available was contained in plaintiffs' 2007 business annual reports, and thus the earliest date that the DED Commissioner had grounds for revoking plaintiffs' eligibility was January 1, 2008.  Defendants also submitted an excerpt from the Governor's "2009-10 Enacted Budget Financial Plan," which projected that the legislation amending the eligibility criteria for business enterprises receiving Empire zones' benefits would provide the State with savings of $90 million in 2009-2010.

IV

The court granted plaintiffs' motion and denied defendants' cross motion.  Based upon the language of the amended statute, the legislative history, and the rule of statutory construction that statutes are generally presumed to apply prospectively (*see* McKinney's Cons Laws of NY, Book 1, Statutes § 51 [c]), the court concluded that "[t]he Legislature could not have intended that . . . the amendments would apply retroactively . . . [and that] the only logical date when §§ 959 (a) (v) (5) and 959 (a) (v) (6) should have taken effect[] was immediately upon the signing of the amendments into law," i.e., April 7, 2009.  The court therefore granted the relief sought by plaintiffs, declaring that the amendments at issue apply prospectively only and that the decertification of plaintiffs, to the extent that it was applied by defendants retroactively to January 1, 2008, was null and void.

The order and judgment was entered June 22, 2010, and the Legislature responded swiftly by enacting legislation on August 11, 2010 addressing the effective date of decertifications made pursuant to the 2009 amendments.  That legislation provides in pertinent part:

> "It is the intent of the legislature to clarify
> and confirm that the amendments made to the
> [G]eneral [M]unicipal [L]aw by chapter 57 of the
> laws of 2009 that require the revocation of
> certification of certain business entities
> previously certified under the [E]mpire [Z]ones
> [P]rogram are intended to be effective for the
> taxable year in which the revocation of
> certification occurs and for all subsequent
> taxable years . . . and that such revocations of
> certification that occur in 2009 are deemed to be
> in effect for the taxable year commencing on or
> after January 1, 2008 and before January 1, 2009"
> (L 2010, ch 57, part R, § 1).

The Legislature also added the following language to General Municipal Law § 959 (a):

> "[W]ith respect to any business . . . whose
> certification has been revoked pursuant to
> subparagraph five or six of this paragraph, that
> revocation (I) will be effective for a taxable
> year beginning on or after January first, two
> thousand eight and before January first, two
> thousand nine and for subsequent taxable years . .
> . and (II) thereafter will be effective for the
> taxable year during which the commissioner makes
> his or her determination (prior to any appeal) to
> revoke the certification of a business . . . and
> for subsequent taxable years" (L 2010, ch 57, part
> R, § 2).

Based upon the 2010 legislation, defendants moved for leave to renew.  The court granted defendants' motion, and upon renewal, concluded that the 2010 legislation, as applied to plaintiffs, results in an unconstitutional taking of plaintiffs' property.  The court therefore declared a second time that the 2009 amendments at issue may be applied prospectively only, and further declared that the decertifications of plaintiffs, to the extent that they were made retroactive to January 1, 2008, were unconstitutional, and thus null and void.

V

Contrary to the contention of plaintiffs and the conclusion of the court, we agree with defendants that the record establishes the intention of the Legislature that the revocation of plaintiffs' certifications pursuant to the 2009 amendments would be effective for the taxable year commencing January 1, 2008.  In reaching that conclusion, we are mindful that, in interpreting a statute, our role is to effectuate the intent of the Legislature, and that the clearest indicator of the legislative intent is the language of the statute (see Patrolmen's Benevolent Assn. v City of N.Y., 41 NY2d 205, 208).  Here, the Legislature provided that the amendments at issue were to "take effect immediately."  When a statute is to take effect and whether that statute applies retroactively, however, are distinct issues.  As the Court of Appeals noted in Majewski v Broadalbin-Perth Cent. School Dist. (91 NY2d 577, 583 [internal quotation marks omitted]), "[w]hile the fact that a statute is to take effect immediately evinces a sense of urgency, the meaning of the phrase is equivocal in an analysis of retroactivity."  Indeed, both parties rely on the phrase to support their respective positions on retroactivity and, "[u]nder the circumstances, the proviso that the subject provisions were to 'take effect immediately' contributes little to our understanding of whether retroactive application was intended on the issue presented" (id. at 583-584).

When the court ruled on the original motion and cross motion, the Legislature had not expressly stated when the revocation of a business enterprise's certification was to be effective.  The court's decision, however, seemingly prompted the Legislature "to clarify and confirm" its intent in no uncertain terms that the decertification of Empire zones' businesses that occurred during 2009 were "deemed to be in effect for the taxable year commencing on or after January 1, 2008 and before January 1, 2009" (L 2010, ch 57, part R, § 2).  While "[t]he Legislature has no power to declare, retroactively, that an existing statute shall receive a given construction when such construction is contrary to that which the statute would ordinarily have received" (Matter of Roosevelt Raceway v Monaghan, 9 NY2d 293, 304, appeal dismissed 368 US 12; see Matter of Bright Homes v Weaver, 7 AD2d 352, 358, affd 6 NY2d 973), here the Legislature's retroactive construction is entirely consistent with the 2009 amendments.  The legislative history of the amendments at issue suggests that they were intended, at least in part, to generate revenue during 2009-2010, revenue that would not be generated if those amendments were to be applied prospectively.  In addition, each of the amendments to the Tax Law

affecting Empire zones' carryover tax credits refers to the retention
certificate issued to business enterprises that satisfied the new
eligibility criteria set forth in General Municipal Law § 959 (a) (v)
(5) and (6), and those amendments to the Tax Law were expressly
effective retroactive to January 1, 2008 (*see* L 2009, ch 57, part S-1,
§§ 11-22, 44 [a]).

Further, "[o]ne crucial legislative function is to clarify the
meaning and purpose of the Legislature's enactments; it is the essence
of the judicial function to honor legislative intent" (*Phillips v City
of New York*, 66 AD3d 170, 188).  As noted, the Legislature acted
swiftly to clarify the effective date of the 2009 amendments in
response to the court's initial decision and, "when the Legislature
does tell us what it meant by a previous act, its subsequent statement
of earlier intent is entitled to great weight" (*Matter of Chatlos v
McGoldrick*, 302 NY 380, 388; *see RKO-Keith-Orpheum Theatres, Inc. v
City of New York*, 308 NY 493, 501-502).

                                  **VI**

While we thus agree with defendants on the issue of legislative
intent, we further conclude that the retroactive application intended
by the Legislature violates plaintiffs' due process rights.  Here,
"[i]nasmuch as the transactions were complete and reimbursement was
owed prior to the . . . effective date of the . . . [s]tatute, which
'altered the substantive law governing [plaintiffs'] conduct[,]' . . .
application of that statute to [plaintiffs'] claims would render it
'retroactive' in the true sense of that term" (*Matter of County of St.
Lawrence v Daines*, 81 AD3d 212, 216, *lv denied* 17 NY3d 703).  The 2009
amendments at issue are not, strictly speaking, retroactive tax laws,
i.e., they do not retroactively impose a new tax or increase an
existing tax.  The amendments, however, alter plaintiffs' eligibility
for tax credits, and the cases addressing the retroactive application
of tax statutes are therefore instructive.  In *Matter of Replan Dev. v
Department of Hous. Preserv. & Dev. of City of N.Y.* (70 NY2d 451, 456,
*appeal dismissed* 485 US 950), the Court of Appeals explained that
determining whether the retroactive application of a tax law offends
constitutional limitations requires a balancing of the equities:

> "In reaching the appropriate balance, several
> factors may be considered.  First, and perhaps
> predominant, is the taxpayer's forewarning of a
> change in the legislation and the reasonableness
> of his reliance on the old law . . . This inquiry
> focuses on whether the taxpayer's reliance has
> been justified under all the circumstances of the
> case and whether his [or her] expectations as to
> taxation [have been] *unreasonably* disappointed . .
> . The strength of the taxpayers' claim to the
> benefit may be significant if he [or she] has
> obtained a sufficiently certain right to the money
> prior to the enactment of the new legislation . .
> . Additionally, the length of the retroactive

> period often has been a crucial factor, and
> excessive periods have been held to
> unconstitutionally deprive taxpayers of a
> reasonable expectation that they will secure
> repose from the taxation of transactions which
> have, in all probability, been long forgotten . .
> . Finally, the public purpose for retroactive
> application is important because of the taxing
> authority's legitimate concern that evasive
> measures taken after introduction of a bill but
> before enactment might frustrate the purpose of
> the legislation" (internal quotation marks and
> citations omitted).

Those factors militate in plaintiffs' favor. The time period at issue, measured from the enactment of the 2009 amendments, is approximately 16 months. Whether that period is excessive, in our view, cannot be resolved in the abstract, but only in light of the other factors, i.e., notice and reliance. "The constitutionality of [the retroactive decertification] turns primarily on whether [plaintiffs] could have reasonably foreseen the enactment and, if [they] could have anticipated [decertification], whether [plaintiffs] would have altered [their] behavior" (*Wittenberg v City of New York*, 135 AD2d 132, 137, *affd* 73 NY2d 753). There is no indication in the record that plaintiffs had any warning that the criteria for certification of Empire zones' businesses were going to change, prospectively or retroactively, prior to April 2009. Further, and most significantly, it is undisputed that plaintiffs maintained their eligibility for Empire zones' tax credits throughout the tax year beginning January 1, 2008 pursuant to the criteria then in effect. As the court observed, here plaintiffs did not merely rely on the continuing benefit of a tax statute (*cf. Matter of Varrington Corp. v City of N.Y. Dept. of Fin.*, 85 NY2d 28, 32-33), but they were induced to conduct their businesses in a particular way in specified disadvantaged areas in reliance upon the availability of Empire zones' tax credits. Under the circumstances, those tax credits "have induced action in reliance thereon [and thus] . . . may not be invalidated by subsequent legislation" (*People v Brooklyn Garden Apts.*, 283 NY 373, 380).

Finally, we conclude that defendants have failed to explain what legitimate public purpose is served by retroactive application of the 2009 amendments. This is not a situation in which "evasive measures taken after introduction of a bill but before enactment might frustrate the purpose of the legislation" (*Matter of Neuner v Weyant*, 63 AD2d 290, 302, *appeal dismissed* 48 NY2d 975; *see Replan Dev*., 70 NY2d at 456). Plaintiffs were powerless to alter the conduct of their businesses for the tax year that ended before the 2009 amendments were introduced, and defendants offer no justification for retroactive application of the 2009 amendments apart from the additional revenue that the State would realize by retroactively eliminating tax credits for certain participants in the Empire Zones Program. That justification by defendants, balanced against the inequity to plaintiffs, is insufficient. We are compelled to conclude that "the

apparent absence of a persuasive reason for retroactivity, with its potentially harsh effects, offends constitutional limits, especially when the tax [credit eliminated] is one which might exert significant influence on . . . business transactions" (*Holly S. Clarendon Trust v State Tax Commn.*, 43 NY2d 933, 935, *cert denied* 439 US 831). The court therefore properly declared that the amendments at issue apply prospectively only, and that the revocations of plaintiffs' certifications, to the extent they were made retroactive to January 1, 2008, are null and void.

## VII

Accordingly, the order and judgment should be affirmed.

Entered:  November 18, 2011                    Patricia L. Morgan
                                               Clerk of the Court