[943 NYS2d 661]

In the Matter of WL, LLC, Appellant, v DEPARTMENT OF ECONOMIC DEVELOPMENT, Also Known as EMPIRE STATE DEVELOPMENT, et al., Respondents.

Third Department, May 3, 2012

### APPEARANCES OF COUNSEL

*Green & Seifter, P.L.L.C.*, Syracuse (*Robert K. Weiler* of counsel), for appellant.

*Eric T. Schneiderman, Attorney General*, Albany (*Owen W. Demuth* of counsel), for respondents.

### OPINION OF THE COURT

KAVANAGH, J.

Respondent Department of Economic Development (hereinafter DED) administers a program pursuant to the New York State Empire Zones Act (*see* General Municipal Law § 955 *et seq.*), which provides tax benefits and credits to commercial enterprises that invest capital and offer employment opportunities in businesses operating in economically distressed areas of New York (*see* General Municipal Law § 956).[1] Four years after the program was implemented, the Comptroller issued the first of two reports indicating that there had been difficulties in verifying whether the jobs created and the investments made by participants in the program were commensurate to the tax benefits and credits they received for participating in it. In response to these concerns, the Legislature, in April 2009, enacted amendments to the Empire Zones Act that imposed additional standards that had to be met before a commercial entity in the program could retain its certification to participate in the program and remain eligible for its tax credits and benefits.[2] One such standard—the "1:1 benefit-cost test"—required an

1. Legislation creating the Empire Zones Program was enacted in 2000. It replaced the Economic Development Zones Program, which was created by statute in 1986.

2. In 2005, the Legislature required that new applicants to the program

entity, to be certified, to establish that it "provide[ed] economic returns to the state in the form of total remuneration to its employees (i.e. wages and benefits) and investments in its facility greater in value to the tax benefits the business enterprise used and had refunded to it" (General Municipal Law § 959 [a] [v] [6]).[3] These amendments also directed respondent Commissioner of Economic Development to review the business annual reports (hereinafter BARs) filed by an entity participating in the program for at least a three-year period to determine if the entity met this new criteria, and remained eligible for the tax benefits (see General Municipal Law § 959 [w]). Later, the Legislature, in August 2010, again amended the statute by making any decertification rendered as a result of the April 2009 amendments retroactive to January 1, 2008 (L 2010, ch 57, § 1, part R, §§ 1-2).[4]

DED, pursuant to these amendments, was authorized to adopt emergency regulations to facilitate its review of entities in the program and, in that regard, published regulations in May 2009 that provided that any such review would be limited to the 2001-2007 time period (see 5 NYCRR 11.9 [c] [2]). The Commissioner then performed a review of petitioner, a certified participant in the program since its inception, and determined that its certification should be revoked because it had not, during the 2001-2007 time period, provided employee remuneration or made capital investments in its business located in the zone that equaled the value of the tax benefits and credits it received from the state. After respondent Empire Zone Designation

had to meet these standards, but they were not applicable to current participants in the program until the April 2009 amendments.

3. The amendments also required that respondent Commissioner of Economic Development verify that program participants had not simply reincorporated or transferred employees or assets to related entities in order to appear to have created new jobs or made new investments to qualify for these tax benefits (see General Municipal Law § 959 [a] [v] [5]). This requirement, referred to as the "shirt changer" standard, is not an issue in this proceeding.

4. DED's initial interpretation that these April 2009 amendments were effective as of January 1, 2008 prompted a court challenge that resulted in a declaratory judgment being issued that these amendments could only be applied prospectively (James Sq. Assoc. LP v Mullen, Sup Ct, Onondaga County, June 22, 2010, Cherundolo, J., index No. 09-6792). After this judgment was entered, the Legislature enacted this amendment making any such decertification retroactive to January 1, 2008. This amendment was challenged and a judgment issued (James Sq. Assoc. LP v Mullen, Sup Ct, Onondanga County, Jan. 14, 2011, Cherundolo, J., index No. 09-6792), which was later affirmed (James Sq. Assoc. LP v Mullen, 91 AD3d 164, 171 [4th Dept 2011]), declaring it unconstitutional for taking private property without due process.

Board (hereinafter the Board) upheld this determination (*see* General Municipal Law § 959 [w]; § 960 [a]), petitioner commenced this combined CPLR article 78 proceeding and action for declaratory judgment challenging the revocation of its certification.

In essence, petitioner argues that it was arbitrary and capricious, as well as an error of law, for DED to perform a review of its performance in this program and not include its purchase in May 2000 of a building used in its business. Specifically, petitioner objects to DED's decision to limit its review to the 2001-2007 time period and argues that it was required by law to consider petitioner's "total" performance in the program, including any activity that took place when petitioner participated in the Economic Development Zones Program (hereinafter EDZP), the predecessor to the Empire Zones Program (hereinafter EZP). Petitioner also claims that DED failed to comply with procedures in the statute that had to be followed for petitioner's certification in the program to be revoked, and that making its decertification retroactive to January 1, 2008 affected an unlawful taking of its property and, as such, violated its constitutional right to due process. Supreme Court dismissed the petition/complaint, prompting this appeal.

The General Municipal Law provides that the Board may revoke an entity's certification if it determines that the entity "has failed to provide economic returns to the state in the form of *total* remuneration to its employees (i.e. wages and benefits) and investments in its facility greater in value to the tax benefits the business enterprise used and had refunded to it" (General Municipal Law § 959 [a] [v] [6] [emphasis added]). Petitioner argues that the term "total" as used in this statute required DED to consider its entire performance, including when it was a participant in the EDZP and, in that regard, should have taken into account the capital investment it made in May 2000 when it purchased a building located in the City of Syracuse empire zone for its real estate business. Specifically, petitioner maintains, and respondents do not disagree, that if this transaction were considered part of DED's review, petitioner would have met the requirements of the 1:1 benefit-cost test as defined in the April 2009 amendments and retained its certification.[5]

---

5. Petitioner's 2001-2007 BARs filed as a participant in the EZP report that it made investments and paid wages totaling $359,529, while it received tax benefits and credits amounting to $473,366.26. In its 2000 BAR filed while

We begin by noting that rules and regulations promulgated by administrative agencies must be consistent with the enabling statutes enacted by the Legislature (*see Matter of General Elec. Capital Corp. v New York State Div. of Tax Appeals, Tax Appeals Trib.*, 2 NY3d 249, 254 [2004]; *Matter of Nicholas v Kahn*, 47 NY2d 24, 31 [1979]). They may "go beyond the text of that legislation, provided they are not inconsistent with the statutory language or its underlying purposes" (*Matter of General Elec. Capital Corp. v New York State Div. of Tax Appeals Tax Appeals Trib.*, 2 NY3d at 254; *see Matter of Medical Socy. of State of N.Y. v Serio*, 100 NY2d 854, 865 [2003]) and will be valid if not " 'so lacking in reason' " as to be considered arbitrary (*Matter of General Elec. Capital Corp. v New York State Div. of Tax Appeals Tax Appeals Trib.*, 2 NY3d at 254, quoting *Matter of Bernstein v Toia*, 43 NY2d 437, 448 [1977]; *see Raffellini v State Farm Mut. Auto. Ins. Co.*, 9 NY3d 196, 201 [2007]). Also, since this is a CPLR article 78 mandamus proceeding, this Court is limited to determining whether DED's decision restricting its review to the 2001-2007 time period is arbitrary and capricious and without a rational basis (*see Matter of Jensen-Dooling v New York State Teachers' Retirement Sys.*, 68 AD3d 1264, 1266 [2009], *lv denied* 14 NY3d 705 [2010]). In that regard, we are mindful that a "determination of an agency acting pursuant to its authority and within its area of expertise is entitled to judicial deference" (*Matter of Riverkeeper, Inc. v Johnson*, 52 AD3d 1072, 1074 [2008], *lv denied* 11 NY3d 716 [2009]).

 As noted, petitioner's principal complaint involves the temporal limits that DED imposed on its decertification review. However, the April 2009 amendments do not require that DED examine every BAR filed by an entity, whether for the EZP or its predecessor, the EDZP. Instead, the amendments require only that the review include *at least three* BARs and, as such, implicitly authorize a limited review of the BARs filed by a program participant (*see* General Municipal Law § 959 [a] [v] [6]; [w]). Also, since 2001 is the first tax year to occur after the EZP came into existence, it represents a logical starting point to review an entity's performance while participating in that program. While it is true, as petitioner claims, that the EZP was designed to replace the EDZP, the two programs are not identical and differences in them do exist. For example, the EZP has

participating in the EDZP, petitioner reported paying $1,640,000 to purchase this building.

criteria as embodied in these amendments that must be satisfied for certification to be granted that were not required of entities when participating in the EDZP, and the tax benefits and credits it awards have been significantly enhanced over those offered by the EDZP (see L 2000, ch 63, § 1, part GG, § 16 [2]). In addition, the 2001-2007 time frame utilized by DED in its review was uniformly applied to more than 8,000 companies, including those, like petitioner, that had been certified prior to 2001 as participants in the EDZP. As a result, a rational basis does exist for the Board's decision to base its review on petitioner's performance in this program during the 2001-2007 time period, and its determination not to include petitioner's 2000 BAR filed with the EDZP was not arbitrary or capricious and did not represent an unlawful exercise of its regulatory authority.[6]

Petitioner also claims that the Board did not give it notice as required by the statute that it intended to revoke petitioner's certification or provide it with a meaningful opportunity to be heard before that determination was made (see General Municipal Law § 959 [w]). When decertification is sought, the Commissioner is required to "provide written notification to such business enterprise of his or her determination to revoke the certification, including the reasons therefor" (General Municipal Law § 959 [w]). Thereafter, the entity may appeal that decision to the Board in writing and may include documentation as well as legal arguments for why its certification should not be revoked (see 5 NYCRR 14.2 [a], [b]).

Here, the Commissioner, by letter dated May 29, 2009, informed petitioner that, pursuant to the April 2009 amendments, an examination of petitioner's business records had been conducted and it was found that petitioner did not "meet the qualifications for continued certification." One month later, in a letter dated June 29, 2009, the Commissioner informed

---

6. Petitioner further argues that the Board failed to consider the merits of its appeal by issuing a summary letter decision after a brief meeting denying its appeal and that of approximately 90 other decertified program participants. While this review process and the resulting "one size fits all" determination has been appropriately criticized (Matter of Office Bldg. Assoc., LLC v Empire Zone Designation Bd., 95 AD3d 1402, 1405 [2012] [decided herewith]), the rationale of the Board in denying petitioner's appeal is clearly based upon an application of 5 NYCRR 11.9 (c) (2) (see Matter of Morris Bldrs., LP v Empire Zone Designation Bd., 95 AD3d 1381 [2012] [decided herewith]; compare Matter of Office Bldg. Assoc., LLC v Empire Zone Designation Bd., supra).

petitioner that its certification was being revoked because it "failed to provide economic returns to the state in the form of total remuneration to its employees (i.e. wages and benefits) and investments in its facility greater in value to the tax benefits [petitioner] used and had refunded to it," and that petitioner had the right to appeal its decertification to the Board (*see* General Municipal Law § 959 [a] [v] [6]; 5 NYCRR 11.9 [c] [2]). Also, petitioner was on notice that DED's decertification review would be based on at least three BARs that it had prepared and filed with the program and that the DED had recently promulgated regulations limiting that review to the 2001-2007 time period (*see* 5 NYCRR 11.9 [c] [2]). As such, petitioner was given adequate notice of the Commissioner's decision, as well as the reasons for its decertification (*see Matter of Voelckers v Guelli*, 58 NY2d 170, 175-176 [1983]; *Matter of Town of Hunter v City of New York*, 46 AD3d 1197, 1199 [2007]; *Matter of Mangini v Christopher*, 290 AD2d 740, 746-747 [2002]).

█ Petitioner also objects to not being granted a hearing before the Board during its appeal of the Commissioner's decision to decertify it and claims that, by the way the Board conducted that proceeding, it deprived petitioner of due process. The statute does not require the Board to hold such a hearing, and petitioner does not deny that it was offered an opportunity to submit documents to the Board to support its claim that it was entitled to continued certification.[7] Also, the decision to decertify petitioner was based upon a mathematical computation performed by DED on figures that petitioner provided in its BARs, and petitioner has not challenged the accuracy of that calculation. Instead, petitioner's principal complaint now, and before the Board, has been directed at the propriety of the Commissioner's decision to limit its review to the 2001-2007 time period. Given the nature and scope of that contention, a hearing was not required for petitioner to be able to fully address this issue in its submissions to the Board, and it was provided with due process by the manner in which the Board processed its appeal.

---

7. The Board is an independent body that makes the final administration determination regarding decertification. Its members include the Commissioner of Taxation and Finance, the Director of the Budget, the Commissioner of Labor, two members appointed by the governor, one member appointed by the temporary president of the senate, one member appointed by the speaker of the assembly, and two nonvoting members appointed by the Legislature's minority leadership.

■ We do agree with petitioner that making its decertification retroactive to 2008 and, as a result, depriving it of tax benefits and credits earned during the 2008 tax year, constitutes an unlawful taking of its property without due process of law. Contrary to respondents' contention, it is petitioner's certification as a participant in this program—and not the attendant tax benefits and credits—that are at issue in this proceeding and represent a property interest that is entitled to due process protection (*see Matter of Gable Transp., Inc. v State of New York*, 29 AD3d 1125, 1127 [2006]; *Chrisley v Morin*, 126 AD2d 977, 978 [1987], *appeal dismissed* 69 NY2d 1037 [1987]). Moreover, the issue raised by making petitioner's decertification retroactive is whether, under all of the circumstances presented, the prejudice that results from the taking of its property is outweighed by the public purpose sought to be served by such governmental action (*see Matter of Replan Dev. v Department of Hous. Preserv. & Dev. of City of N.Y.*, 70 NY2d 451, 456 [1987], *appeal dismissed* 485 US 950 [1988]). In assessing the constitutionality of such a decision—especially one that has such a significant impact on taxpayers—a number of factors must be considered, including the reasonableness of the taxpayer's reliance on the old law, the foreseeability that the law would be changed, the length of the retroactive period and the public purpose sought to be served by making the enactment retroactive (*see id.* at 456; *James Sq. Assoc. LP v Mullen*, 91 AD3d 164, 171 [4th Dept 2011]).

At the outset, we note that before these amendments were enacted in April 2009, petitioner had fully complied with all of the laws then in place for program certification. Moreover, no claim has been made that petitioner engaged in any misconduct or made any misrepresentations while participating in the EZP or did anything that, under the law as it then existed, would have constituted "grounds for revoking certification" (General Municipal Law § 959 [a]). Also, there can be no doubt that petitioner, by fully complying with the laws then in place to obtain its certification, had every reason to assume that it would continue to enjoy the benefits of certification so long as it continued to comply with the provisions in the existing statutory enactments. When these amendments were enacted, the program had been in existence in one form or another for over 25 years, and petitioner had been a certified participant in it since 2000. Also, before these amendments were even introduced, there is no indication in the record that any of the EZP

participants were on notice that the rules governing certification would be changed. In fact, when these additional criteria for certification was first introduced, it was originally intended that they apply only to new entities seeking admission to the program, and not to entities already certified to participate in it (see L 2005, ch 63, § 1, part A, § 5 [part W]; § 3). We also note that these amendments, when enacted in April 2009, were not made retroactive until August 2010—or well after the 2009 tax year had ended and petitioner, while certified to participate in the program, had made decisions in its business that entitled it to certain tax benefits and credits (see Holly S. Clarendon Trust v State Tax Commn., 43 NY2d 933, 935 [1978], cert denied 439 US 831 [1978]). Given this history, petitioner had every reason to expect that as long as it retained its certification and complied with the requirements then in place for the program, it could make investments in its business, be they in the form of capital contributions or the employment of additional personnel, and rely upon the program's promise that it would receive commensurate tax relief.

Respondents do not deny that petitioner has been adversely affected by the retroactive application of these amendments, but contend that the additional revenues generated and the ameliorative effect such action will have in addressing abuses it contends exist in the program far outweigh any prejudice that might otherwise result. We do not agree. While depriving petitioner—and other entities similarly situated—of tax credits and benefits legitimately earned would undoubtedly generate additional revenue for the state, this is an inevitable consequence of making such statutes retroactive and, standing alone, cannot justify governmental appropriation of private property. Moreover, it is difficult to understand how making this statute retroactive could act to address problems in the EZP that may exist or, more importantly, how that objective could possibly be served by severely penalizing an entity that has faithfully complied with the requirements of the program and legitimately earned its tax credits. As a result, we conclude that the retroactive application of the April 2009 amendments constituted an unlawful taking of petitioner's property and, as such, violated its right to due process. Therefore, the revocation of petitioner's certification in this program cannot be made retroactive to January 1, 2008 and the amendments may only be prospectively applied.

PETERS, P.J., ROSE, GARRY and EGAN JR., JJ., concur.

Ordered that the judgment is modified, on the law, without costs, by reversing so much thereof as dismissed that part of the petition/complaint seeking a declaration that the April 2009 amendments to General Municipal Law § 959 may not be applied retroactively to January 1, 2008; petition/complaint granted to that extent and it is declared that said amendments shall be applied prospectively; and, as so modified, affirmed.