[993 NE2d 374, 970 NYS2d 888]

JAMES SQUARE ASSOCIATES LP et al., Respondents, v DENNIS MULLEN, Commissioner, New York State Department of Economic Development, et al., Appellants.

In the Matter of J-P GROUP, LLC, Respondent, v NEW YORK STATE DEPARTMENT OF ECONOMIC DEVELOPMENT et al., Appellants, et al., Respondent.

In the Matter of MORRIS BUILDERS, LP, et al., Respondents, v EMPIRE ZONE DESIGNATION BOARD et al., Appellants.

In the Matter of HAGUE CORPORATION, Respondent, v EMPIRE ZONE DESIGNATION BOARD et al., Appellants.

In the Matter of WL, LLC, Respondent-Appellant, v DEPARTMENT OF ECONOMIC DEVELOPMENT, Also Known as EMPIRE STATE DEVELOPMENT, et al., Appellants-Respondents.

Argued April 23, 2013; decided June 4, 2013

234

## POINTS OF COUNSEL

*Eric T. Schneiderman, Attorney General*, Albany (*Andrew D. Bing, Owen Demuth* and *Barbara D. Underwood* of counsel), for appellants in the first and second above-entitled action and proceeding. The limited retroactive application of the April 2009 amendments does not violate the Due Process Clause. (*Matter of St. Clair Nation v City of New York*, 14 NY3d 452; *Majewski v Broadalbin-Perth Cent. School Dist.*, 91 NY2d 577; *United States v Carlton*, 512 US 26; *Pension Benefit Guaranty Corporation v R. A. Gray & Co.*, 467 US 717; *Welch v Henry*, 305 US 134; *Matter of Varrington Corp. v City of N.Y. Dept. of Fin.*, 85 NY2d 28; *Matter of Replan Dev. v Department of Hous. Preserv. & Dev. of City of N.Y.*, 70 NY2d 451; *Matter of Neuner v Weyant*, 63 AD2d 290; *Matter of Roosevelt Raceway v Monaghan*, 9 NY2d 293; *People v Brooklyn Garden Apts.*, 283 NY 373.)

*Eric T. Schneiderman, Attorney General*, Albany (*Andrew D. Bing, Owen Demuth* and *Barbara D. Underwood* of counsel), for appellants in the third and fourth above-entitled proceedings and actions and appellants-respondents in the fifth above-entitled proceeding and action. I. The legislature intended the April 2009 amendments to apply to decertified businesses as of January 1, 2008. (*Matter of St. Clair Nation v City of New York*, 14 NY3d 452; *Majewski v Broadalbin-Perth Cent. School Dist.*, 91 NY2d 577; *Long v State of New York*, 7 NY3d 269; *Matter of OnBank & Trust Co. [Hartnett]*, 90 NY2d 725; *Matter of Duell v Condon*, 84 NY2d 773; *Matter of Grand Jury Subpoena Duces Tecum Served on Museum of Modern Art*, 93 NY2d 729; *Matter of Gleason [Michael Vee, Ltd.]*, 96 NY2d 117; *Matter of North v Board of Examiners of Sex Offenders of State of N.Y.*, 8 NY3d 745; *Astoria Fed. Sav. & Loan Assn. v State of New York*, 222 AD2d 36, 88 NY2d 1064, 522 US 808; *People ex rel. Beck v Graves*, 280 NY 405.) II. The limited retroactive application of the April 2009 amendments does not violate the Due Process Clause. (*United States v Carlton*, 512 US 26; *Matter of Replan Dev. v Department of Hous. Preserv. & Dev. of City of N.Y.*, 70 NY2d 451; *Pension Benefit Guaranty Corporation v R. A. Gray & Co.*, 467 US 717; *Welch v Henry*, 305 US 134; *Matter of Varrington Corp. v City of N.Y. Dept. of Fin.*, 85 NY2d 28; *Matter of Neuner v Weyant*, 63 AD2d 290; *Matter of Roosevelt Raceway v Monaghan*, 9 NY2d 293; *Usery v Turner Elkhorn Mining Co.*, 428 US 1; *United States v Darusmont*, 449 US 292; *Wiggins v Commissioner of Internal Revenue*, 904 F2d 311.)

*Bond, Schoeneck & King, PLLC*, Syracuse (*Jonathan B. Fellows* of counsel), for respondents in the first above-entitled action. I. The legislature did not provide that decertifications under the 2009 Empire Zone Amendments would be retroactive when it adopted them in April 2009. (*Morales v Gross*, 230 AD2d 7; *Majewski v Broadalbin-Perth Cent. School Dist.*, 91 NY2d 577; *Matter of Roosevelt Raceway v Monaghan*, 9 NY2d 293, 368 US 12; *Matter of Bright Homes v Weaver*, 7 AD2d 352, 6 NY2d 973.) II. The retroactive decertification of the plaintiffs as Empire Zone enterprises is unconstitutional. (*Eastern Enterprises v Apfel*, 524 US 498; *General Motors Corp. v Romein*, 503 US 181; *Landgraf v USI Film Products*, 511 US 244; *Pension Benefit Guaranty Corporation v R. A. Gray & Co.*, 467 US 717; *United States v Carlton*, 512 US 26; *United States v Darusmont*, 449 US 292; *Oregon v Hass*, 420 US 714; *People v Isaacson*, 44 NY2d 511; *People v Singer*, 44 NY2d 241; *Matter of Varrington Corp. v City of N.Y. Dept. of Fin.*, 85 NY2d 28.)

*Mosey Persico, LLP*, Buffalo (*Jennifer C. Persico* of counsel), for respondent in the second above-entitled proceeding. The retroactive application of the 2009 amendments violates the Due Process Clause. (*Matter of Chrysler Props. v Morris*, 23 NY2d 515; *Matter of Replan Dev. v Department of Hous. Preserv. & Dev. of City of N.Y.*, 70 NY2d 451; *Welch v Henry*, 305 US 134; *Jacobus v Colgate*, 217 NY 235; *United States v Hudson*, 299 US 498; *Holly S. Clarendon Trust v State Tax Commn.*, 43 NY2d 933; *Chrisley v Morin*, 126 AD2d 977; *People v Brooklyn Garden Apts.*, 283 NY 373; *Tate & Lyle, Inc. v Commissioner of Internal Revenue Serv.*, 87 F3d 99; *Canisius Coll. v United States*, 799 F2d 18.)

*Collier, Halpern, Newberg, Nolletti & Bock, LLP*, White Plains (*Philip M. Halpern* of counsel), for respondents in the third above-entitled proceeding and action. I. The amendments were not made retroactive until 2010. (*Matter of Allied Grocers Coop. v Tax Appeals Trib.*, 162 AD2d 791; *Matter of St. Clair Nation v City of New York*, 14 NY3d 452; *Forti v New York State Ethics Commn.*, 75 NY2d 596; *Matter of Miller v DeBuono*, 90 NY2d 783; *Morales v Gross*, 230 AD2d 7; *Majewski v Broadalbin-Perth Cent. School Dist.*, 91 NY2d 577; *Matter of Amorosi v South Colonie Ind. Cent. School Dist.*, 9 NY3d 367; *Affronti v Crosson*, 95 NY2d 713, 534 US 826; *Matter of Siwek v Mahoney*, 39 NY2d 159; *State of New York v Green*, 96 NY2d 403.) II. The Third Department properly determined that the retroactive application of the April 2009 amendments violated respondent's right

to due process. (*Alliance of Am. Insurers v Chu*, 77 NY2d 573; *Chrisley v Morin*, 126 AD2d 977, 69 NY2d 1037; *Nebbia v New York*, 291 US 502; *Matter of Chrysler Props. v Morris*, 23 NY2d 515; *Matter of Replan Dev. v Department of Hous. Preserv. & Dev. of City of N.Y.*, 70 NY2d 451, 485 US 950; *Holly S. Clarendon Trust v State Tax Commn.*, 43 NY2d 933, 439 US 831; *United States v Carlton*, 512 US 26; *Welch v Henry*, 305 US 134; *People v Brooklyn Garden Apts.*, 283 NY 373; *Wittenberg v City of New York*, 135 AD2d 132.)

*Hodgson Russ LLP*, Albany (*Michelle L. Merola* and *Christopher L. Doyle* of counsel), for respondent in the fourth above-entitled proceeding and action. I. The period of retroactivity should be measured from August 2010. (*Morales v Gross*, 230 AD2d 7; *Majewski v Broadalbin-Perth Cent. School Dist.*, 91 NY2d 577; *Matter of Grand Jury Subpoena Duces Tecum Served on Museum of Modern Art*, 93 NY2d 729; *Matter of Roosevelt Raceway v Monaghan*, 9 NY2d 293.) II. Retroactive application of the 2009 amendments to January 1, 2008 violates due process. (*United States v Carlton*, 512 US 26; *Chrisley v Morin*, 126 AD2d 977; *Matter of Replan Dev. v Department of Hous. Preserv. & Dev. of City of N.Y.*, 70 NY2d 451; *People v Brooklyn Garden Apts.*, 283 NY 373; *People ex rel. New York Cent. & Hudson Riv. R.R. Co. v Mealey*, 224 NY 187.)

*Bousquet Holstein PLLC*, Syracuse (*Robert K. Weiler, Philip S. Bousquet* and *Cecelia R.S. Cannon* of counsel), for respondent-appellant in the fifth above-entitled proceeding and action. I. The Third Department applied an incorrect legal standard in reviewing the regulation. (*Matter of Daily Star v Board of Trustees of Vil. of Cooperstown*, 164 AD2d 531; *Kurcsics v Merchants Mut. Ins. Co.*, 49 NY2d 451; *Weingarten v Board of Trustees of N.Y. City Teachers' Retirement Sys.*, 98 NY2d 575; *Matter of General Elec. Capital Corp. v New York State Div. of Tax Appeals, Tax Appeals Trib.*, 2 NY3d 249; *Matter of Murtha v Leonard*, 210 AD2d 411; *Matter of West 90s/W. 100s Neighborhood Coalition v Surles*, 205 AD2d 461.) II. The regulation omitting year 2000 investments was inconsistent with the enabling statute, General Municipal Law § 959. (*Matter of Stryker v Board of Educ. of City School Dist. of City of N.Y.*, 86 NY2d 198; *Matter of Blalock v Olney*, 17 AD3d 842; *Matter of Chase Partners, LLC v Incorporated Vil. of Rockville Ctr.*, 43 AD3d 1049; *Pajak v Pajak*, 56 NY2d 394; *Matter of Matthew L.*, 65 AD3d 315; *Knickerbocker Vil. Tenants Assn. v Calogero*, 13 Misc 3d 755; *Weed v Tucker*, 19 NY 422.) III. Even under a rationality review, the

regulation must be overturned. IV. Both the Third and Fourth Departments correctly decided that the retroactive amendments to General Municipal Law § 959 violated due process. (*Andre v City of New York*, 47 AD3d 605; *Brunette v Time Warner Entertainment Co., L.P.*, 32 AD3d 1170; *Mrozinski v St. John*, 304 AD2d 950; *Memphis Light, Gas & Water Div. v Craft*, 436 US 1; *Weingarten v Board of Trustees of N.Y. City Teachers' Retirement Sys.*, 98 NY2d 575; *Matter of Gable Transp., Inc. v State of New York*, 29 AD3d 1125; *Chrisley v Morin*, 126 AD2d 977; *Matter of Replan Dev. v Department of Hous. Preserv. & Dev. of City of N.Y.*, 70 NY2d 451; *Litod Paper Stock Corp. v City of New York*, 154 AD2d 280; *Beaumont Co. v State of New York*, 125 Misc 2d 87.)

**OPINION OF THE COURT**

Chief Judge LIPPMAN.

The common question presented by these appeals is whether the retroactive application of the 2009 Amendments to the Empire Zones Program complies with the Due Process Clause of the Fifth Amendment. Evaluating these cases under the balancing test of *Matter of Replan Dev. v Department of Hous. Preserv. & Dev. of City of N.Y.* (70 NY2d 451, 456 [1987]), we conclude that the retroactive application of the 2009 Amendments violated plaintiffs' due process rights and affirm on slightly different grounds from those invoked by the Appellate Division.

## I. Facts and Procedural History

### A. The Empire Zones Program

In 1986, the legislature enacted New York State's Economic Development Zones Act (the EDZ Program). The goal of the EDZ Program was to stimulate private investment, private business development, and job creation in certain geographic areas characterized by persistent poverty, high unemployment, shrinking tax bases, and dependence on public assistance (*see* General Municipal Law § 956). The EDZ Program offered a variety of state tax incentives designed to attract new businesses to the state and to enable existing businesses to expand and create more jobs (*see id.*). Over time, the EDZ Program gradually shifted its focus on poverty reduction to business development by relaxing eligibility requirements, and the name of the

program was changed to the Empire Zones Program Act (the Program) in May of 2000 (L 2000, ch 63, part GG).[1]

Businesses located in qualifying Empire Zone areas and that otherwise meet the statute's criteria could apply to the Department of Economic Development (DED) for a certificate of eligibility, which they could then submit to the Department of Taxation and Finance in support of their claim for tax credits (*see* General Municipal Law § 959 [a]). Among the tax credits available to qualifying businesses were the Empire Zone Wage Tax Credit, permitting certified Program participants to claim a credit of $1,500 to $3,000 per new job created against their New York State tax liability (*see* Tax Law §§ 210 [19]; 606 [k]). Since 2000, the Program has provided that a company's continued eligibility for Program benefits requires it to meet the Program's wage, employment, and investment goals, and new tax credits and exemptions were added for qualified Empire Zone enterprises (*see* Technical Analysis, Dept of Taxation and Finance, Bill Jacket, L 2000, ch 63 at 37-40). The State Comptroller issued two reports (one in 2004 and one in 2007) noting problems with verifying that Program participants were meeting the job creation and investment goals of the Program.

B. The 2009 Amendments

On April 7, 2009, Governor Paterson signed legislation enacting certain amendments (the 2009 Amendments) to General Municipal Law § 959 (L 2009, ch 57, part S-1, § 3). The 2009 Amendments introduced two new criteria that businesses must meet to retain their certificates of eligibility for the Program. The legislature also required the Commissioner of Economic Development to review all certified businesses during 2009 to determine if they should be decertified under the new criteria and closed the Program to new participants (General Municipal Law § 959 [w]). The impetus for the 2009 Amendments was the Governor's Enacted Budget Financial Plan, which stated that reforms were necessary to rein in abuses in the Empire Zones Program. The Governor projected that the 2009 Amendments would provide savings of $90 million in 2009-2010 to the State.

---

1. (*See also* New York State Office of the Comptroller, *Assessing the Empire Zones Program: Reforms Needed to Improve Program Evaluation and Effectiveness* [Rep 3-2005, Apr. 2004], available at http://osc.state.ny.us/reports/empirezone3-2005.pdf [accessed May 28, 2013].) The Empire Zones Program is overseen by the Department of Economic Development and the Empire State Development Corporation pursuant to General Municipal Law article 18-B.

The new criteria included determining whether Program participants engaged in a practice known as "shirt-changing." Businesses were prevented from reincorporating or transferring employees or assets among related entities in order to appear to have created new jobs or made new investments to maximize Program benefits (*see* General Municipal Law § 959 [a]). An additional criterion was that a participant must have "provide[d] economic returns to the state in the form of total remuneration to its employees (i.e. wages and benefits) and investments in its facility greater in value to the tax benefits the business enterprise used and had refunded to it" (General Municipal Law § 959 [a] [v] [6]). This requirement was also referred to as the "1:1 benefit-cost standard." A business that failed to meet either standard was subject to decertification.

The 2009 Amendments were to take effect immediately, and section 44 of the legislation said that the amendments to the Tax Law relating to the carryover of tax credits "shall apply to taxable years beginning on and after January 1, 2008" (L 2009, ch 57, part S-1, § 44 [a]). However, the legislature did not adopt the provisions of the Governor's 2009 Budget Bill that provided that decertifications made pursuant to the new criteria and required review by the Commissioner would be retroactive to January 1, 2008.[2] Nevertheless, both the Commissioner of Economic Development and the Department of Taxation and Finance (DTF) announced that the 2009 Amendments applied to the tax years beginning on and after January 1, 2008.

## C. The August 2010 Clarification

The legislature amended the statute in August 2010 to state that the decertifications pursuant to the 2009 Amendments were effective as of January 1, 2008. The 2010 update stated, "It is the intent of the legislature to clarify and confirm that the [2009] amendments . . . are intended to be effective for the taxable year . . . . [S]uch revocations of certification . . . are

---

**2.** The proposed language of the bill stated:

"With respect to any business enterprise decertified pursuant to subparagraph six of paragraph (ii) of this subdivision, that decertification (1) will be effective for a taxable year beginning on or after January first, two thousand eight and before January first, two thousand nine and for subsequent taxable years for a business enterprise for which a review is required to be conducted pursuant to subdivision (w) of this section in calendar year two thousand nine" (2009 NY Senate-Assembly Bill S60-A, A160-A).

This language did not appear in the legislation as ultimately passed and signed by the Governor in 2009.

deemed to be in effect for the taxable year commencing on or after January 1, 2008 and before January 1, 2009" (L 2010, ch 57, part R, § 1).

### D. Procedural History

Plaintiffs are businesses which were certified under the Program and were issued certificates of eligibility by the State prior to 2008. On June 29, 2009, the DED issued letters to each of the plaintiffs to notify them of their decertification from the Empire Zones Program. Each letter stated that the revocation was effective January 1, 2008, pursuant to the 2009 Amendments. Plaintiffs were decertified for either "shirt-changing," failing to meet the 1:1 benefit-cost standard, or for both violations.

In the *James Sq. Assoc. LP v Mullen* action, plaintiffs filed their complaint while their administrative appeals were pending, seeking a declaration that the decertification constituted an improper retroactive application of the 2009 Amendments. Supreme Court granted the *James Sq.* plaintiffs' summary judgment motion and concluded that the State defendants[3] acted without legal authority when they applied the new criteria for the Empire Zones Program retroactively.

After the legislature clarified its intention and stated that the 2009 Amendments to the Empire Zones Program were to be applied retroactively to January 1, 2008, Supreme Court granted the State's motion to renew its previous motion for summary judgment but adhered to its prior determination. The court determined that the legislature's "clarification" in fact altered the legislation and created a period of retroactivity of two years and eight months. The court declared that the legislature's clarification as applied was an unconstitutional taking of the *James Sq.* plaintiffs' property.

The Appellate Division affirmed in *James Sq.* (91 AD3d 164, 166 [4th Dept 2011]). Though the Court agreed that the legislature made clear its intent to make the Empire Zone Amendments retroactive, the Court concluded that the retroactivity of the 2009 Amendments violated the *James Sq.* plaintiffs' due process rights. The Court determined that the time period

---

**3.** Defendants in these five actions include Dennis Mullen, the Commissioner of the DED; Jamie Woodward, Commissioner of the DTF; the DED; the DTF, the Empire State Development Corporation; and the Empire Zone Designation Board (collectively, the State).

at issue, the lack of warning to plaintiffs, and the lack of legitimate public purpose of the retroactive application of the 2009 Amendments rendered it unconstitutional, null, and void.

Petitioner J-P Group, LLC owns and manages commercial rental properties in Buffalo and was certified as a qualified Empire Zone enterprise in March 2002. J-P Group's certification was revoked retroactively to January 2008 on the ground that it failed the 1:1 benefit-cost test. Supreme Court granted J-P Group's petition to annul the State's decertification of J-P Group as a qualified Empire Zone enterprise. The court stated that the decertification of J-P Group was arbitrary and capricious. The Appellate Division modified, affirming only to the extent that it determined that the amendments to General Municipal Law § 959 are prospective only (91 AD3d 1363, 1364 [4th Dept 2012]). The Court stated, "Although the Legislature intended that the subject amendments were to apply retroactively, we have recently held [in *James Sq.*] that such 'retroactive application . . . violates [a party's] due process rights' " (*id.*).

Plaintiffs Morris Builders, LP and Morris Industrial Builders, LP (Morris Builders) received their Empire Zones Program certification in 2004, and the certification was revoked retroactively on the ground that it failed the 1:1 benefit-cost test. Plaintiff Hague Corporation obtained its certification as an Empire Zone business in 1995, and its certification was also revoked for failing the 1:1 benefit-cost test. In two separate decisions, Supreme Court determined that the retroactive application of the 2009 Amendments did not violate Morris Builders' and Hague's due process rights. In both cases, the Appellate Division modified to the extent of granting the part of plaintiffs' petitions seeking a declaration that the 2009 Amendments could not be applied retroactively to January 1, 2008 (96 AD3d 1144, 1147 [3d Dept 2012]; 95 AD3d 1381, 1384-1385 [3d Dept 2012]).

Plaintiff WL, a commercial real estate company, obtained certification as an Empire Zone business on May 9, 2000. On June 9, 2000, WL acquired commercial real estate and improvements at 217 South Salina Street in Syracuse, a facility in an economically distressed downtown area. In May 2009, WL received an initial letter from the State relaying that an examination of WL's business records revealed that it "appear[ed]" that WL did not meet the qualifications of continued certification. On June 29, 2009, WL received a letter that stated WL's certification was revoked effective on January 1, 2008. WL appealed to

the Board, and the Board determined that WL failed to provide sufficient evidence that the Commissioner's finding was in error. The Board revoked WL's certification because it failed the 1:1 benefit-cost test.

WL maintained that if WL's year 2000 investments were included in the State's evaluation, its benefit-cost ratio would be greater than 4:1. WL reported paying $1.6 million for its purchase of the building in the year 2000, and received tax credits between 2001 and 2007 amounting to $473,366. General Municipal Law § 959 (w) states that the DED's decertification review would be based on at least three business annual reports (BARs) that the business had prepared and filed with the Program. DED had promulgated regulations in 5 NYCRR 11.9 (c) (2) stating that it would review the BARs from the years 2001 to 2007, and, as a result, only WL's contributions from 2001 to 2007 were considered in the 1:1 benefit-cost test. WL argued, before the Board and in the present matter, that 5 NYCRR 11.9 (c) (2) conflicts with the statutory directive to consider an Empire Zone business's "total" performance in the Program.

Supreme Court dismissed WL's petition seeking to annul the Board's determination to revoke WL's Empire Zone certification. The court concluded that the State's determination was not arbitrary and capricious and the State was not required by the General Municipal Law to consider documentation from the year 2000. The Appellate Division again modified to the extent of granting that part of the petition seeking a declaration that the 2009 Amendments could not be applied retroactively to January 1, 2008 (97 AD3d 24 [3d Dept 2012]). Additionally, the Court determined that the "2009 amendments do not require that DED examine every BAR filed by an entity" and the Board had a rational basis to base its review on WL's performance during the 2001-2007 time period (id. at 29). The Court stated, "[T]he 2001-2007 time frame utilized by DED in its review was uniformly applied to more than 8,000 companies, including those, like [WL], that had been certified prior to 2001 as participants in the EDZP" (id. at 30). The Appellate Division noted that the 2009 Amendments only require the Board to review three BARs and so the Board was authorized to conduct a limited review of WL's BARs.

The State appealed as of right pursuant to CPLR 5601 (b) (1) in all of these cases on the issue of whether the 2009 Amendments can be applied retroactively. This Court granted WL leave

to cross-appeal (20 NY3d 853 [2012]). The cross appeal raises the additional issues of whether 5 NYCRR 11.9 (c) (2) can be harmonized with General Municipal Law § 959 and whether DED violated WL's due process right in revoking WL's certification.

## II. Retroactive Application of the 2009 Amendments

"[F]or centuries our law has harbored a singular distrust of retroactive statutes" (*Eastern Enterprises v Apfel*, 524 US 498, 547 [1998, Kennedy, J., dissenting in part]). The United States Supreme Court stated in *Landgraf v USI Film Products* that "[e]lementary considerations of fairness dictate that individuals should have an opportunity to know what the law is and to conform their conduct accordingly; settled expectations should not be lightly disrupted" (511 US 244, 265 [1994]). However, the retroactivity provisions of a tax statute are not necessarily unconstitutional and are generally tolerated and considered valid if for a short period (*Matter of Replan Dev. v Department of Hous. Preserv. & Dev. of City of N.Y.*, 70 NY2d 451, 455 [1987]). This is because taxation is "but a way of apportioning the cost of government among those who in some measure are privileged to enjoy its benefits and must bear its burdens" (*Welch v Henry*, 305 US 134, 146 [1938]). The courts must examine, "in light of 'the nature of the tax and the circumstances in which it is laid', [whether] the retroactivity of the law is 'so harsh and oppressive as to transgress the constitutional limitation' " (*Replan*, 70 NY2d at 455, quoting *Welch v Henry*, 305 US at 147). In *Replan*, this Court laid out a multi-factor balancing-of-equities test to determine whether a retroactive tax infringes on a taxpayer's due process rights (*see* 70 NY2d at 456). The important factors in determining whether a retroactive tax transgresses the constitutional limitation are (1) "the taxpayer's forewarning of a change in the legislation and the reasonableness of . . . reliance on the old law," (2) "the length of the retroactive period," and (3) "the public purpose for retroactive application" (*id.*).

■ The Appellate Division decisions below incorrectly characterize the retroactive application of the tax statute here as an unconstitutional taking of property. While the Fifth Amendment's Takings Clause is but one of many constitutional provisions that express principles of antiretroactivity (*see Landgraf*, 511 US at 266; *see e.g.* Ex Post Facto Clause [US Const, art I, §§ 9 (3); 10 (1)]; prohibition on the impairment of

contracts [US Const, art I, § 10 (1)]; prohibition on Bills of Attainder [US Const, art I, §§ 9 (3); 10 (1)]), plaintiffs' claims are not valid Takings Clause challenges. The Takings Clause prevents government actors "from depriving private persons of vested property rights except for a 'public use' and upon payment of 'just compensation' " (*Landgraf*, 511 US at 266; US Const 5th Amend). "[A] party challenging governmental action as an unconstitutional taking bears a substantial burden," and evaluating whether an action is a "taking" requires a court to consider the "economic impact of the regulation, its interference with reasonable investment backed expectations, and the character of the governmental action" (*Eastern Enterprises*, 524 US at 523-524).

The purported taking here is plaintiffs' obligation to pay tax to the State in the absence of a valid tax credit. However, "[t]he mere imposition of an obligation to pay money . . . does not give rise to a claim under the Takings Clause of the Fifth Amendment" (*Kitt v United States*, 277 F3d 1330, 1336 [Fed Cir 2002], *on rehearing in part* 288 F3d 1355 [2002] [internal quotation marks and citation omitted]). Federal courts have held that "[f]or retroactive taxation to be a taking, it must be 'so arbitrary as to constrain to the conclusion that it was not the exertion of taxation' " (*Kitt*, 277 F3d at 1337, quoting *Brushaber v Union Pacific R. Co.*, 240 US 1, 24-25 [1916]; *see Houck v Little River Drainage Dist.*, 239 US 254, 265 [1915] [a tax is only a taking if it is a "flagrant abuse, and by reason of its arbitrary character is mere confiscation of particular property"]). The retroactive tax liability imposed in the present case cannot be characterized as so flagrant as to constitute the confiscation of property under the Takings Clause. Plaintiffs had no guarantee that they would ever recoup their business investments through the receipt of tax credits, and the New York Constitution provides that tax exemptions are freely repealable (NY Const, art XVI, § 1).[4]

The dissent maintains that examining all retroactive tax statutes as purported takings of vested property rights would help to clarify this area of law. The dissent's view unnecessarily complicates the law because the test for whether a retroactive tax violates the Due Process Clause is different from the test for whether a retroactive tax is an unconstitutional taking. An aggrieved taxpayer may choose to make a claim that a retroactive

---

4. Moreover, plaintiffs do not argue that their prospective decertifications from the Empire Zones Program constitute unconstitutional takings.

tax violates the Due Process Clause under the standards in *United States v Carlton* (512 US 26 [1994]) and our precedent in *Replan*. The focus of the three-pronged test is fairness. The taxpayer additionally may choose to challenge the statute under the Takings Clause, but must recognize that it is more difficult to prove that the tax amounted to "flagrant abuse" and the seizure of property (*see Houck*, 239 US at 265). The Supreme Court has recognized that it is more difficult to make out violations of the Takings Clause than a violation of the Due Process Clause (*see Concrete Pipe & Products of Cal., Inc. v Construction Laborers Pension Trust for Southern Cal.*, 508 US 602, 641 [1993]). The Takings Clause jurisprudence therefore does not clarify the due process inquiry in *Replan*; it is a different question altogether.

We now turn to that other question: whether plaintiffs' due process rights were infringed by the statute utilizing the three factors articulated in *Replan*. In terms of "the taxpayer's forewarning of a change in the legislation and the reasonableness of his reliance on the old law" (*Replan*, 70 NY2d at 456), the plaintiffs had no warning and no opportunity at any time in 2008 to alter their behavior in anticipation of the impact of the 2009 Amendments. The 2009 Amendments were not introduced in the legislature until January 2009. Though the 2004 and 2007 reports from the Comptroller pointed out weaknesses in the Empire Zones Program, it did not spell out the new criteria on shirt-changing and 1:1 benefit-cost calculations to be implemented for existing Program participants in 2009. The taxpayer's insufficient reliance in *United States v Carlton* can be contrasted because the retroactive effect of the tax deduction was to correct an error made by Congress that created a "significant and unanticipated revenue loss" (512 US at 31-32 ["It seems clear that Congress did not contemplate such broad applicability of the deduction when it originally adopted § 2057"]). In contrast, the 2009 Amendments were not meant to cure an unintended error by the legislature. The main purpose of the 2009 Amendments was to increase tax receipts for the state budget. Plaintiffs appeared to have conducted their business affairs in a manner consistent with existing Program requirements in 2008, justifiably relying on the receipt of the tax benefits that were then in effect. Therefore, the first *Replan* factor weighs in favor of plaintiffs.

The second factor, the length of the period of retroactivity, also benefits plaintiffs. The parties dispute, and indeed the

Third and Fourth Department disagreed, as to whether the period of retroactivity spans 16 or 32 months. Plaintiffs argue that the actual period of retroactive application for the 2009 Amendments should not be measured from January 2008 to April 2009, but from January 2008 to August 2010, a total of 32 months. Plaintiffs contend that the August 2010 legislation was not a "clarification" as stated by the legislature but a substantive act of legislation. The State argues that the period of retroactivity should be measured from January 2008 to April 2009 for a period of 16 months. While the language of the August 2010 bill supports the view that the legislature's 2010 action was simply a clarification of its previous intent, the legislature's overt omission of retroactivity language in the 2009 Amendments is indicative that August 2010 was the first time the legislature made the Program criteria retroactive.

Regardless of whether the period of retroactivity is deemed to span 16 or 32 months, the length of retroactivity should be considered excessive and weighs against the State. While one year of retroactivity is not considered excessive according to *Replan*, the period of retroactivity was long enough in the present case so that plaintiffs gained a reasonable expectation that they would "secure repose" in the existing tax scheme (*Replan*, 70 NY2d at 456 [internal quotation marks omitted]). While the State points to various federal and state cases where tax laws with longer periods of retroactivity were upheld, many of the cases concerned curative measures by legislatures to correct errors, instances where logistical issues made retroactivity necessary (*e.g. Welch v Henry*, 305 US 134, 144-149 [1938] [retroactivity period of two years upheld where Wisconsin Legislature only met every two years and acted at its first opportunity]), or the lack of detrimental reliance by the taxpayers (*e.g. Matter of Varrington Corp. v City of N.Y. Dept. of Fin.*, 85 NY2d 28, 33 [1995] [two-year period of retroactivity upheld where taxpayer did not detrimentally rely on the temporarily altered tax policy]). As none of these points is present here, the cases cited by the State are distinguishable.

On the third factor, dispositive in this case, the State fails to set forth a valid public purpose for the retroactive application of the 2009 Amendments. The legislature did not have an important public purpose to make the law retroactive. It was not attempting to correct an error in the tax code as in *Carlton*, or to prevent "the loss of [single room occupancy] housing and to discourage the precipitous eviction of tenants" as in *Replan* (70

NY2d at 457). The Empire Zones Program's cost to the state budget in 2008-2009 was not an unanticipated or unintended consequence of a previous legislative enactment. The legislature's only purposes were to stem abuses in the Empire Zones Program (increasing the benefits to the public relative to the cost of the credits) and to increase tax receipts. However, retroactively denying tax credits to plaintiffs did nothing to spur investment, to create jobs, or to prevent prior shirt-changing. The retroactive application of the 2009 Amendments simply punished the Program participants more harshly for behavior that already occurred and that they could not alter.

Furthermore, raising money for the state budget is not a particularly compelling justification. Absent an unexpected loss of revenue, such a legislative purpose is insufficient to warrant retroactivity in a case where the other factors militate against it, as is the situation here. Raising funds is the underlying purpose of taxation, and such a rationale would justify every retroactive tax law, obviating the balancing test itself. As such, there is no cognizable valid public purpose for the retroactive effect of the 2009 Amendments, and all three factors weigh in favor of plaintiffs. Therefore, we affirm the Appellate Division's determinations in all five cases that the 2009 Amendments should not be applied retroactively.

### III. 5 NYCRR 11.9 (c)

■ On its cross appeal, WL argues that 5 NYCRR 11.9 (c), DED's regulation to limit its review to a Program participant's business annual reports filed between 2001 and 2007 for decertification purposes, is inconsistent with the wording of the statute. We conclude that DED's regulation does not conflict with the statutory directive in General Municipal Law § 959 to consider an Empire Zone business's "total" performance. General Municipal Law § 959 (a) (v) (6) provides that one of the criteria for decertification is that "the business enterprise has failed to provide economic returns to the state in the form of total remuneration to its employees (i.e. wages and benefits) and investments in its facility greater in value to the tax benefits the business enterprise used and had refunded to it." First of all, the word "total" can be read to modify "remuneration to its employees." The legislature provided what "total remuneration" to employees is, by listing "wages and benefits." Additionally, section 959 (w) provides that the Commissioner may base decertification on a review of at least three BARs. While it is

arguable whether this requirement was meant to prevent businesses operating for fewer than three years from being decertified, the statute did not specifically require that the DED look at all available BARs in making a decertification decision under the 1:1 benefit-cost test. The responsible agency, DED, gave the ambiguous statute a rational interpretation that was not inconsistent with the plain language (*see Matter of Brown v Wing*, 93 NY2d 517, 524 [1999] [determining that it is "proper to utilize a rational interpretation by the agency responsible for administering the statute"]).

Moreover, it is unlikely that the legislature would require the DED to look at every business annual report for every business in the Program for every year of participation. Some of the Program businesses have been certified since 1986, and the requirements and benefits of the Program have changed over time. Notably, the Empire Zones Program changed its name in 2000 and implemented new requirements for businesses to pass employment tests to qualify for new credits and benefits. Because of the shift in requirements and benefits and the passage of time, it was practical for remuneration and business investments to be calculated from the start of the Empire Zones Program onwards. Though it may have been more precise to start recognizing investments made on or after May 16, 2000, the inception date of the Program, it was not arbitrary and capricious for the DED to choose to commence recognition of investments as of January 1, 2001 (the beginning of the first full year of the Program). The business annual reports detail the business investments and wages paid per calendar year and do not break down remuneration or investments on a month-to-month basis. It would have been difficult for the DED to collect information regarding investments and wages for only a portion of the year 2000. Therefore, the DED could rationally decide to tally investments beginning in 2001, and its decertification of WL was not arbitrary and capricious.

Accordingly, in each of the first four above-captioned cases, the order of the Appellate Division, insofar as appealed from, should be affirmed, with costs, and in *Matter of WL, LLC v Department of Economic Dev.* the order of the Appellate Division should be affirmed, without costs.

SMITH, J. (dissenting in part). I dissent to the extent that the majority holds the retroactive application of the 2009 Amendments unconstitutional.

The question of when a tax statute may be made retroactive is one on which the decided cases provide frustratingly little guidance. It is clear that some retroactivity is allowed, but not too much. If we ask how much is too much, we are told to consider whether "retroactive application is so harsh and oppressive as to transgress the constitutional limitation" (*Welch v Henry*, 305 US 134, 147 [1938])—guidance hardly more useful than being told to decide whether the State or the taxpayer wins the case. *United States v Carlton* (512 US 26, 30 [1994]) says that the *Welch* formulation " 'does not differ from the prohibition against arbitrary and irrational legislation' that applies generally to enactments in the sphere of economic policy" (quoting *Pension Benefit Guaranty Corporation v R. A. Gray & Co.*, 467 US 717, 733 [1984]). *Carlton* also says: "Tax legislation is not a promise, and a taxpayer has no vested right in the Internal Revenue Code" (512 US at 33). Yet the *Carlton* opinion itself examines a retroactive tax statute more minutely than the language I have quoted would seem to suggest, stressing the benign motive of Congress (*id.* at 32) and the promptness with which Congress acted (*id.* at 32-33). *Matter of Replan Dev. v Department of Hous. Preserv. & Dev. of City of N.Y.* (70 NY2d 451, 456 [1987]) establishes a balancing test and lists the factors to be considered, chief among which are "the taxpayer's forewarning of a change . . . and the reasonableness of his reliance," but it is no more precise than other authorities in stating the question that the balancing is supposed to answer.

I do not have a formula for bringing great clarity and certainty to this area. But I think the majority creates more confusion by saying, in substance, that the "property" that is protected by the Due Process Clause is different from the property rights protected by other clauses of the Constitution (majority op at 246-247). I would approach retroactive taxation cases in the opposite way: I think it is helpful, and consistent with precedent, to ask whether it was reasonable for the taxpayer to rely on favorable tax treatment as it might rely on a property or contract right protected under the Takings Clause or the Contract Clause of the Constitution. This, it seems to me, is the idea suggested by the traditional term "vested right"—a term long out of fashion (*see Matter of Chrysler Props. v Morris*, 23 NY2d 515, 521 [1969]), but at least as useful as any of the terminology used in later cases. The approach I suggest would by no means eliminate the vagueness that pervades this area of the law; nor would it supersede the *Replan* balancing test. But I think it may help to clarify the question we are trying to answer when we apply *Replan*.

Rejecting this approach, the majority seems to say that the difference between a retroactive tax statute that is a taking and one that only violates due process is between one that is so "arbitrary" as not to be "the exertion of taxation" at all (majority op at 247, quoting *Kitt v United States*, 277 F3d 1330, 1337 [Fed Cir 2002]; *Brushaber v Union Pacific R. Co.*, 240 US 1, 24-25 [1916]), and one that is less arbitrary but still fails the test of "fairness" (majority op at 248). The majority does not say how courts are to distinguish the greater unfairness from the lesser one, nor explain why it is useful to do so. Nor does it explain how this distinction squares with *Carlton*'s statement, which I quoted above (at 252) that only "arbitrary and irrational" retroactive tax legislation violates the Due Process Clause. I think it is the majority's approach, not mine, that "unnecessarily complicates the law" (majority op at 247).

Applying the approach I think correct to this case, I cannot see that the taxpayers were justified in relying on their Empire Program certifications as though they were property or contract rights. In general, as *Carlton* makes clear, taxpayers are on notice that the tax laws are subject to change. The balancing of the *Replan* factors, as I would perform it, favors the State. The length of the retroactive period, even putting it at 32 months, was not outrageous; and for 19 of those 32 months—from the time the Governor proposed the 2009 Amendments, in January 2009, until the retroactive legislation was enacted in August 2010—it was public knowledge that a change retroactive to January 1, 2008 was being sought. Indeed, after the 2009 Amendments were passed in April 2009, the Governor and his appointees openly stated their belief that retroactivity had already been accomplished; even if they were wrong, the very debate on the subject gave the taxpayers reason to be cautious in relying on their certifications. The reason for the retroactive amendments was, as the majority acknowledges, to remedy "weaknesses in the Empire Zones Program" (majority op at 248) and "to stem abuses" in that program (*id.* at 250). The majority says that the legislation was not designed "to correct an error" (*id.* at 249)—but the distinction between correcting errors and stemming abuses is a thin one, if it exists at all. It is also true, of course, that the legislation was designed to raise revenues and balance the budget—but that is what all taxation does.

I would hold this legislation to be constitutional.

Judges GRAFFEO, READ, PIGOTT and RIVERA concur with Chief Judge LIPPMAN; Judge SMITH dissents in an opinion; Judge ABDUS-SALAAM taking no part.

In *James Sq. Assoc. LP v Mullen, Matter of J-P Group, LLC v New York State Dept. of Economic Dev., Matter of Morris Bldrs., LP v Empire Zone Designation Bd.* and *Matter of Hague v Empire Zone Designation Bd.*: Order, insofar as appealed from, affirmed, with costs.

Judges GRAFFEO, READ, PIGOTT and RIVERA concur with Chief Judge LIPPMAN; Judge SMITH dissents in part in an opinion; Judge ABDUS-SALAAM taking no part.

In *Matter of WL, LLC v Department of Economic Dev.*: Order affirmed, without costs.