Kane W. LYNN et al., Plaintiffs,

v.

David J. COHEN et al., Defendants.

No. 71 Civ. 2171.

United States District Court,
S. D. New York.

May 11, 1973.

Howard Gotbetter, New York City, for plaintiffs.

Shaw Bernstein Scheuer Boyden & Sarnoff, New York City, for defendants; by Merton Sarnoff, New York City, of counsel.

## OPINION AND ORDER

DUFFY, District Judge.

This is a diversity action for defamation and prima facie tort. Plaintiff Lynn is the president of the plaintiff corporations, each of which is the general partner in a separate limited partnership formed in New York to produce and distribute horror films. The defendants are all limited partners in one or both of the partnerships. The action has been discontinued against all the defendants except Cohen, and Cohen has moved to dismiss for lack of personal jurisdiction. Although the pleadings are devoid of any jurisdictional facts, such facts have been supplied in the affidavits submitted by the parties in support of their respective positions. In deciding a motion to dismiss for lack of personal jurisdiction, it is proper for the Court to rely on affidavits to establish jurisdictional facts. 2A Moore's Federal Practice, ¶ 12.14; Broadstone Realty Corp. v. Evans, 213 F.Supp. 261 (S.D. N.Y.1962).

Defendant Cohen states in his affidavit that he is a resident of Oklahoma, who makes his living as a marketing consultant and investor, "with interests in films, fast food operations and the stock market." In 1968, he bought one-third of defendant Stark's limited partnership interest in the Mad Doctor Company, of which Hemisphere Pictures, Inc. was the general partner, and in 1969, he became a limited partner of the Beast of Blood Island Company, of which Sceptre Industries, Inc. was the general partner. In April 1971, having become concerned about the plaintiffs' management of the limited partnerships, and with the approval of the other named defendants, Cohen visited the plaintiffs' offices while in New York on another matter, inspected the plaintiffs' books, and spoke to plaintiff Lynn. Upon his return to Oklahoma, he wrote a three page report describing his visit, criticizing Lynn's management, and suggesting the retention of an auditor and an attorney to check further. He sent the report to forty-six other limited partners of the two ventures. It is this report which forms the grounds for plaintiffs' suit.

Plaintiffs' first contention in response to defendant's motion to dismiss is that he has waived the defense of lack of personal jurisdiction by "appearing generally" in this action, and by raising it for the first time in his amended answer. Plaintiffs rely heavily on the fact that the defendant's time to answer was extended by stipulation nine times, apparently arguing that the stipulations taken together constituted a general appearance. This argument

fails to recognize that under Rule 12 there is no longer any distinction between general and special appearances. Wright v. Yackley, 459 F.2d 287, 291 (9th Cir. 1972); Kerr v. Compagnie de Ultramar, 250 F.2d 860, 864 (2d Cir. 1958). The procuring of stipulations extending the time to answer does not waive the defense of lack of personal jurisdiction. Blank v. Bitker, 135 F.2d 962 (7th Cir. 1943); Bartner v. Debiasse, 20 F.R.D. 355 (E.D.N.Y.1957); Juczczak v. Huber Mfg. Co., 13 F.R.D. 434 (W.D.N.Y.1953). Nor was it fatal to omit the defense from the first answer, since the second, filed only six days later, was "an amendment thereof permitted by rule 15(a) to be made as a matter of course." Fed.R.Civ.P. 12(h)(1). Therefore, the defense was not waived.

Thus we come to the merits of the defense. The question is whether the New York long-arm statute, C.P.L.R. § 302(a), provides a basis for this Court to exercise jurisdiction over defendant Cohen. The statute provides:

"(a) Acts which are the basis of jurisdiction. As to a course of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person or through an agent,

1. transacts any business within the state; or

2. commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act; or

3. commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he

 (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or

 (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce;"

Plaintiffs argue that by investing in the partnerships, both of which were producing movies in New York, the defendant transacted business in New York. In making this argument, plaintiffs assume that a general partner engaged in the business of a limited partnership acts as the "agent" of the limited partners within the meaning of C.P.L.R. § 302(a). This assumption is unfounded. Being strictly a creature of statute, a limited partnership resembles a corporation more closely than it does an ordinary partnership. Ruzicka v. Rager, 305 N.Y. 191, 111 N.E.2d 878 (1953); N.Y.Partnership Law, Art. 8 (McKinney's Consol.Laws, c. 39, 1948). The principal-agent relationship which exists between the partners of an ordinary partnership is not present between the limited and general partners of a limited partnership. Moreover, the actual relationship between plaintiffs and defendant created by the partnership agreements[1] does not meet the standards of agency established by the courts of New York in construing the long-arm statute. Under these standards, the defendant principal must exercise "domination and control" over the activities of the plaintiff agent in order to come within the statute. Hodom v. Stearns, 32 A.D.2d 234, 236, 301 N.Y.S. 2d 146, 147, appeal dismissed, 25 N.Y.2d 722, 307 N.Y.S.2d 225, 255 N.E.2d 564 (1969). The cases make clear that the amount of "domination and control" required is considerably more than defendant Cohen exercised over the plaintiffs under the partnership agreements.

---

1. Although Cohen was a named partner in only one of the agreements there is no need to distinguish between them because both agreements are identical in all respects relevant to the decision of this motion.

The applicable standards are set forth most explicitly in Hodom v. Stearns, *supra*. There the court examined the provisions of the "license" contract between plaintiff and defendant to discover whether the plaintiff was actually the defendant's agent or his licensee. It found that the defendant had retained the power to set prices, terms and conditions of placement of the units to be sold by the plaintiff, and also the power to collect directly from the customer any sums owed; and that the plaintiff was bound to send all contracts of sale to the defendant within 48 hours, and was forbidden to use any advertising material without the prior approval of the defendant. Under these circumstances, the court found sufficient domination and control by the defendant over the plaintiff to justify the exercise of jurisdiction. The same test was used in Parke-Bernet Galleries, Inc. v. Franklyn, 26 N.Y.2d 13, 308 N.Y.S.2d 337, 256 N.E.2d 506 (1970), where an employee of Parke-Bernet was held to be the temporary agent of a bidder in California who participated in the auction through the employee by means of the telephone. During the auction, the employee was acting entirely at the direction of the bidder.

The papers submitted in this case provide no evidence of any such control or domination of the plaintiffs by the defendant. On the contrary, by investing in the partnerships, the defendant placed his money under the domination and control of the plaintiffs. The partnership agreements expressly stated that

"None of the Limited Partners, nor any of them shall have any control over the production, distribution, or exploitation of said motion picture or the business activities of the Partnership, except insofar as any Limited Partner may also be a director, officer or shareholder of the General Partner."

No allegation is made that Cohen is a director, officer or shareholder of either of the corporate plaintiffs. In addition, both agreements give the General Partner exclusive power to terminate the partnership at will, to refuse to accept a proposed Substitute Limited Partner "for any reason whatsoever," to fix interim production expenses pending final determination thereof, to borrow money, and to require the Limited Partners to repay, pro rata, portions of the distributions received whenever the partnership has unpaid debts or taxes. Under these circumstances, it is obvious that the established standards for transacting business in New York through an agent have not been met.

■ Plaintiffs also maintain that by publishing the defamatory material in New York, defendant committed "a tortious act within the state" as defined in C.P.L.R. § 302(a)(2). To this argument defendant responds first, that publication of defamatory material in New York does not constitute commission of a tort in this State for jurisdictional purposes, and second, that the complaint alleges no more than defamation and thus falls within the exception contained in § 302(a)(2) and (3). With regard to the location of the tort, it appears that the defendant is correct. The New York courts have given a strict interpretation to § 302(a)(2), requiring, in effect, that the defendant be physically present in New York when committing the tort. The Court of Appeals held in Feathers v. McLucas, 15 N.Y.2d 443, 261 N.Y.S.2d 8, 209 N.E.2d 68 (1965), that sending a faulty pressure tank into the state, where it exploded, did not constitute commission of a tortious act within the state. Surely, it would reach the same conclusion in the case of a defamatory report, as one lower court already has. Radio Association v. A. S. Abell Company, 58 Misc.2d 483, 296 N.Y.S.2d 21 (Sup.Ct.N.Y.Cty.1968).[2] The cases cited

2. There only defamation was pleaded, and the court was applying C.P.L.R. § 302(a)

(1) rather than § 302(a)(2). However, it seems safe to assume that a court's

by the plaintiffs are wholly inapposite, since they deal with the timing of publication for the purpose of tripping the statute of limitations, rather than the place of publication for the purpose of determining jurisdiction.

However, defendant need not have committed a tortious act within the state to be subject to New York's jurisdiction under § 302(a)(3)(i) or (ii). Although it does not appear that Cohen derives sufficient revenue from "goods used or consumed or services rendered" in New York to come within § 302(a)(3)(i), he may well come within § 302(a)(3)(ii). It seems fairly clear that he expected the act of sending the report to have consequences in New York, albeit not the consequences alleged, and it would be surprising if a man of his occupation did not derive substantial revenue from interstate commerce. However, it is pointless to reach either of these questions before determining the threshold one of whether the complaint states a cause of action for anything other than defamation. If only defamation is alleged, then neither § 302(a)(2) nor § 302(a)(3) can provide a basis of jurisdiction.

 The allegations of the complaint may be briefly summarized. After identifying the parties and pleading diversity jurisdiction, it alleges as a first cause of action the publication in New York by Cohen of a document containing false and damaging statements about the plaintiffs, a copy of which is annexed to the complaint as Exhibit I. The second cause of action repeats all but the damage clause of the first, and adds:

"21. The sending of Exhibit I to the limited partners of Mad Doctor Company and to the limited partners of Beast of Blood Island Company, by defendants was done in a wilfull [sic] and wanton and malicious manner for the purpose of interfering with the contractual relations of plaintiffs and each of them had [sic] with the respective limited partners of the partnerships referred to above.

"22. By virtue of the foregoing, plaintiffs and each of them have been greatly damaged by the acts of defendants referred to above."

The third cause of action repeats all but the damage clause of the first and adds only:

"24. The acts of defendants were done with malice and with the intention to harm and injure plaintiffs and each of them.

"25. By virtue of the foregoing, plaintiffs are entitled to an award of punitive damages against defendants and each of them."

It is difficult to see how the second and third "causes of action" can be construed as anything other than allegations of damages caused by the alleged libel asserted in the first cause of action. Plaintiffs' assertion in their brief that the second cause of action is for "wilful and malicious interference with contractual relationships" does not cure the fact that no actual interference is alleged. The New York courts have enumerated the essential elements of a cause of action for interference with contractual relations as follows:

". . . a valid contract between a plaintiff and another; defendant's knowledge of the contract; defendant's intentional interference or intentional procuring of a breach of that contract without justification; and damages . . ." Bryce v. Wilde, 39 A.D.2d 291, 293, 333 N.Y.S.2d 614, 616 (1972).

Plaintiffs have cited no case, and I can find none, where an interference amounting to anything less than actual

determination of the "place of publishing" defamatory material for jurisdictional purposes, would be the same whether the

publication constituted "transaction of business" or "a tortious act."

inducement of breach of contract was held actionable by a New York court. Under this standard, a mere allegation that the defendant attempted to interfere with the contractual relations of the plaintiffs falls far short of stating a cause of action.

Plaintiffs face an additional problem in that their second and third "causes of action" lie in the area of prima facie tort. This doctrine was developed by the courts to allow recovery for wrongs not cognizable under traditional tort theory. Its proper uses and limitations have been carefully delineated by the New York courts:

> "The key to prima facie tort is the infliction of intentional harm, resulting in damage, without excuse or justification, by an act or series of acts which would otherwise be lawful. The need for the doctrine of prima facie tort arises only because the specific acts relied upon—and which it is asserted caused the injury—are not, in the absence of an intention to harm, tortious, unlawful, and therefore actionable.

> "Thus where specific torts account for all the damages sustained, whether provable as general damages or pleadable, and provable as special damages, prima facie tort does not lie." Ruza v. Ruza, 286 App.Div. 767, 769–770, 146 N.Y.S.2d 808, 811 (1955).

Here there are no damages alleged which cannot be accounted for by the specific tort of libel, i. e., the publication of the allegedly defamatory report. The allegations of motive and malice affect only the type and amount of damages; they do not constitute separate acts giving rise to separate claims. In addition, there is a total failure to allege special damages, which has been held an essential element of a prima facie tort. Brandt v. Winchell, 286 App.Div. 249, 141 N.Y.S.2d 674 (1955). Thus, under the New York rule the plaintiffs have failed to state a cause of action for prima facie tort.

■ Occasional attempts by parties to recharacterize actions for defamation as prima facie torts in order to take advantage of the six year, as opposed to the one year, statute of limitations, have been firmly disallowed by the New York courts:

> "However useful the doctrine [of prima facie tort] may be in a proper case, it should not be employed for the questionable purpose of avoiding the application of the statute of limitations where it appears that the cause of action is essentially the traditional one of libel or slander." Green v. Time, Inc., 147 N.Y.S.2d 828, 830, aff'd 1 A.D.2d 665, 146 N.Y.S.2d 812 (1955), aff'd 3 N.Y.2d 732, 163 N.Y. S.2d 970, 143 N.E.2d 517 (1957).

See also Morrison v. National Broadcasting Co., 19 N.Y.2d 453, 280 N.Y.S.2d 641, 227 N.E.2d 572 (1967).[3] It seems equally clear that the doctrine should not be used to avoid the operation of the New York long-arm statute with its carefully tailored exception for defamation suits.

For the foregoing reasons, the defendant's motion to dismiss the complaint for lack of personal jurisdiction is granted.

So ordered.

---

3. But see Sheppard v. Coopers' Incorporated, 156 N.Y.S.2d 391, aff'd 157 N.Y.S. 2d 898 (1956), a similar case where it was held that a cause of action for both libel and prima facie tort had been stated.

The important distinction between that case and ours is that there the complaint contained allegations of non-defamatory statements made with malice and a consequent inability to obtain employment.