OPINION OF THE COURT
Bellacosa, J.
This CPLR article 78 proceeding comes to this Court from a judgment of the Appellate Division which ruled in favor of the New York City taxing authority against the petitioner taxpayer, Varrington Corporation. The judgment confirmed a determination of the City Commissioner of Finance finding that petitioner was subject to a general corporation tax deficiency for years 1984, 1985, and 1986 in the sum of $338,043, including interest. The issues are whether the Tax Commis *31 sioner’s determination imposing retroactive effect to Rules of the Commissioner of Finance Relating to the New York City General Corporation Tax § 1-5 (a) is justified and supported by substantial evidence.
During the tax years 1984 through 1986, Varrington Corporation was a Netherlands Antilles company and a limited partner in Richfield Investment Company, Ltd. (Richfield), a New York limited partnership which owned a commercial building in New York City. The investment in Richfield was Varrington’s sole business activity in New York, in which it held a 97.5% interest. For each of the tax years in question, Varrington filed general corporation tax returns and paid corporate taxes of $31,225, $31,778 and $34,962 for the tax years 1984, 1985 and 1986, respectively, calculating its liability based on the average fair market value of its investment and business capital allocated to New York City, as provided in Administrative Code of the City of New York § 11-604 (1) (E).
Varrington’s tax liability was based on a 1954 State Attorney-General opinion. It declared that a limited partner of a limited partnership doing business in New York was itself doing business in the forum for tax purposes (see, 1954 Opns Atty Gen 221). On April 19, 1988, the New York State Department of Taxation and Finance issued an advisory opinion (TSB-A-88 [10]C) concluding that the rationale of the 1954 opinion was unsound and not to be followed. The advisory opinion declared that foreign corporate limited partners should not be deemed to be doing business or employing capital in New York State for corporation tax purposes. On June 3, 1988, the Department of Finance of the City of New York, following the State’s interpretation, ruled in an individual taxpayer Finance Letter Ruling (not Varrington) that an "alien corporation[ ], whose sole contact with New York City is the holding of passive limited partnership interests in a partnership doing business in New York City, will not be subject to the General Corporation Tax” (Finance Letter Ruling 67).
In August 1988, Varrington, aware of and expressly alluding to the Finance Letter Ruling 67, applied for and received a refund of all City corporate taxes which it had paid for tax years 1984 through 1986. On July 16, 1990, however, the New York City Department of Finance reversed its field once again and adopted General Corporation Tax Rules § 1-5, which ruled in pertinent part:
*32 "[A] corporation shall be deemed to be doing business in the City if it owns a limited partnership interest in a partnership that is doing business, employing capital, owning or leasing property, or maintaining an office in the City” (codified at 19 RCNY 11-06 [a]). The Commissioner’s explanation accompanying the promulgation of the regulation in the City Record acknowledged that ”[t]his amendment reflects a change in the Department’s position regarding the taxability of corporations that are limited partners in limited partnerships doing business in New York City” (emphasis added).
Subsequently, on July 21, 1990, the Department sought to recoup the refund it had paid to Varrington in 1988. The City issued a Notice of Determination to Varrington, which asserted a general corporate tax deficiency for the years at issue, based exclusively on section 1-5, that Varrington was doing business in the City because it was a limited partner in Richfield. The Commissioner sustained the determination, stating that the Department’s policy since 1954 was to apply the general corporation tax to foreign corporate limited partners in limited partnerships doing business in New York City. The Commissioner also stated that the 1988 Letter Ruling, relied upon by Varrington and acted on by the City in making the refund, was binding only as to those to whom the ruling was directed.
Varrington commenced this article 78 proceeding seeking to annul the Commissioner’s determination. The Appellate Division denied the petition and confirmed the Commissioner’s determination as supported by substantial evidence (201 AD2d 282, 283-284). We granted leave to appeal and now affirm.
Retroactive tax legislation may be treated as valid, unless it reaches so far into the past or so unfairly as to constitute a deprivation of property without due process (see, Matter of Lacidem Realty Corp. v Graves, 288 NY 354, rearg denied 289 NY 675; United States v Hemme, 476 US 558; United States v Darusmont, 449 US 292; Welch v Henry, 305 US 134). Varrington argues that section 1-5, adopted in 1990, can only be applied prospectively because (1) section 1-5 constituted a significant, additional change in the pertinent, promulgated tax policy of 1988, and (2) Varrington detrimentally relied on the settled policy. Varrington also argues that the Commis *33 sioner abused her discretion applying section 1-5 retroactively because Varrington was given no notice of the Department’s additional change in taxing policy.
As to Varrington’s detrimental reliance point, it posits that it relied on the City’s Letter Ruling and the State’s 1988 Technical Services Bureau advisory opinion when it amended its tax returns and filed for a refund. Varrington claims that the City made the refund in response to that reliance and it is plainly detrimental for the City to roll that refund back.
Varrington’s reliance claim is misplaced because it shifts the analytical focus of this issue to the tax refund rather than, as it should be, on the underlying taxing event which gives rise to the tax liability in the first instance. Undeniably, Varrington paid the corporate tax in 1984, 1985 and 1986, believing that the tax was legally owed. There was certainly no detrimental reliance at that point. It was only in 1988 that Varrington came to believe that it might garner a refund. The fact that it must now return the refund does not support the detrimental reliance theory. Since tax legislation is not a governmental promise, Varrington has no vested or actionable right in these circumstances to the benefit of a tax statute or regulation. Varrington, therefore, cannot claim that it was unjustifiably prejudiced by the retroactive application of the regulation in the detrimental reliance sense (compare, United States v Carlton, 512 US —, —, 114 S Ct 2018, 2023).
As to retroactivity itself, we held that retroactivity of a tax statute, for a short period, is generally permitted (Clarendon Trust v State Tax Commn., 43 NY2d 933, 934, cert denied 439 US 831; Matter of American Tel. & Tel. Co. v State Tax Commn., 61 NY2d 393, 404; United States v Carlton, 512 US —, —, 114 S Ct 2018, 2022, supra; Helvering v Reynolds Co., 306 US 110). The question turns on a "balancing of equities” by looking to see if there are any potentially harsh effects of applying the law retroactively to the taxpayer (Clarendon Trust v State Tax Commn., supra, at 934-935). "Retroactivity” is permitted in the area of taxation because:
"Taxation is neither a penalty imposed on the taxpayer nor a liability which he assumes by contract. It is but a way of apportioning the cost of government among those who in some measure are privileged to enjoy its benefits and must bear its burdens. Since no citizen enjoys immunity from that burden, its retroactive imposition does not *34 necessarily infringe due process, and to challenge the present tax it is not enough to point out that the taxable event, the receipt of income, antedated the statute” (Welch v Henry, 305 US 134, 146-147, supra).
The Administrative Code of the City of New York § 11-603 (1) imposes a general corporation tax "[f]or the privilege of doing business, or of employing capital, or of owning or leasing property in the city in a corporate or organized capacity, or of maintaining an office in the city.” From 1954, when the Attorney-General issued the initial opinion, to 1988, foreign corporations which owned a limited partnership interest in partnerships doing business in New York were subject to tax pursuant to section 11-603. The 1988 Technical Services Bureau advisory opinion was the first statement by either the City or State to question the efficacy of the 1954 opinion. The City followed the State’s advisory opinion, issuing Finance Letter Ruling 67, in which the City concluded that a foreign limited partner would not be subject to the General Corporation Tax. Thus, New York City’s tax policy as to foreign limited partners remained firmly settled and consistent from 1954 to 1988.
Notwithstanding the clear import of these facts, Varrington argues that well before the 1988 ruling the City followed a policy of not taxing foreign limited partners. The taxpayer’s reliance on Lynn v Cohen (359 F Supp 565) is misplaced. In Lynn, the Federal District Court for the Southern District of New York held in 1973 that a nonresidential limited partner who invested in a partnership that produced movies in New York was not "doing business in New York”. Lynn fails to support Varrington’s claim for two important reasons. First, Lynn was not a tax case. The issue in Lynn was whether New York’s long-arm statute, CPLR 302 (a), provided a basis for the Federal court to exercise jurisdiction over a foreign limited partner. In addition, even though the State cited to Lynn in its 1988 Technical Services Bureau advisory opinion, there is no record support to assume that New York’s taxing authorities adopted the reasoning of Lynn and applied it to New York’s tax policy from 1973 onward. Indeed, Varrington’s own accountants stated in a letter to the City that it was their understanding that the 1988 Letter Ruling and the State’s Technical Services Bureau advisory opinion represented a significant change from prior taxing policy.
*35 Varrington also relies on a 1980 City Finance Bulletin to support its claim that New York had a well-defined policy of not taxing foreign limited partners prior to the issuance of the 1988 Letter Ruling. The 1980 Bulletin, however, dealt with the taxation of foreign corporations that own stock in companies conducting business in New York. The Bulletin failed to mention the City’s policy of taxing foreign limited partners acting as limited partners of a partnership doing business in New York, which is the subject of this proceeding. This record is thus devoid of evidence to support Varrington’s claim that New York had a long-established policy of not taxing foreign limited partners prior to 1988. Indeed, all of the evidence points in the opposite direction that New York’s policy of taxing foreign limited partners as doing business in New York remained consistent from 1954 to 1988.
The Finance Letter Ruling 67 is the blip on the screen. This is demonstrated by Varrington’s own acts at first of filing and paying the tax in 1984, 1985 and 1986, the very years Varrington claims that the City did not tax foreign limited partners. The payment of the tax — and not under protest— establishes without question Varrington’s own clear understanding of the City’s extant and long-standing policy of applying the general corporate tax to foreign corporate limited partners.
Since there was no cognizable detrimental reliance on the temporarily altered, long-standing tax policy, and since the 1990 regulation was justifiably applied in relation to the challenged taxing event, we affirm the dismissal of the petition.
We have considered Varrington’s other arguments and conclude that they are without merit.
Accordingly, the judgment of the Appellate Division should be affirmed, with costs.
Chief Judge Kaye and Judges Simons, Titone, Smith, Levine and Ciparick concur.
Judgment affirmed, with costs.