===================================================================
This opinion is uncorrected and subject to revision before
publication in the New York Reports.
-------------------------------------------------------------------
No. 116
Philip Caprio, et al.,
          Respondents,
        v.
New York State Department of
Taxation and Finance, et al.,
          Appellants,
Andrew M. Cuomo, &c.,
          Defendant.



          Judith Vale, for appellants.
          John G. Nicolich, for respondents.








STEIN, J.:

          On this appeal, we are asked to decide whether the 3½-

year retroactive application of the 2010 amendments to Tax Law

§ 632 (a) (2) (L 2010, ch 57, Part C) is unconstitutional, as

applied to plaintiffs, under the Due Process Clauses of the

United States and New York State Constitutions.  The amendments,

- 1 -

as applied here, involve the intersection of two federal tax statutes, 26 USC §§ 338 (h) (10) and 453 (h) (1) (A), which address "deemed asset sales" and use of the installment method of accounting, respectively.  Plaintiffs challenge the amendments insofar as they retroactively imposed a tax on the 2007 sale of the stock of their subchapter S corporation in a deemed asset sale, for which they utilized the installment method for federal tax purposes.  Applying the balancing of the equities test set forth in James Sq. Assoc. LP v Mullen (21 NY3d 233, 246 [2013]) and Matter of Replan Dev. v Department of Hous. Preserv. & Dev. of City of N.Y. (70 NY2d 451, 456 [1987], appeal dismissed 485 US 950 [1988]), we conclude that retroactive application of the 2010 amendments did not violate plaintiffs' due process rights.

I.

Plaintiffs are Florida residents who owned the capital stock of Tri-Maintenance & Contractors, Inc. d/b/a TMC Services, Inc., a New Jersey corporation that provided janitorial services. TMC had elected to be taxed as a subchapter S corporation for state and federal tax purposes (see Internal Revenue Code [26 USC] §§ 1361-1379; Tax Law § 660).  An S corporation is permitted to avoid paying corporate income taxes by passing through income to its shareholders, who are then responsible for reporting the income on their personal tax returns.  The character of the income remains the same and is treated as though the shareholder realized it directly from the S corporation's source, or incurred

it in the same manner that the corporation did (see 26 USC § 1366
[a], [b]; Tax Law § 617 [b]).

Resident New York shareholders pay state income tax on
all pass-through S corporation income (see Tax Law § 617 [a] -
[b]), but nonresidents are assessed proportional New York State
income taxes based on the percentage of the S corporation's total
gains that are derived from or connected with New York sources of
corporate income (see Tax Law §§ 631 [a] [1] B]; 632 [a] [2]).
To ensure parallel state and federal treatment, each item of
pass-through gain retains the same character for state and
federal income tax purposes (see Tax Law §§ 617 [b], 632 [e]
[2]).  TMC earned nearly 50% of its total income in New York.

In 2007, plaintiffs sold all of their shares in TMC to
Sanitors Services, Inc., for approximately $20 million.
Plaintiffs and Sanitors jointly made an election under Internal
Revenue Code (26 USC) § 338 (h) (10) to treat the transaction as
a "deemed asset sale," pursuant to which the corporation that is
being sold is treated, for tax purposes, as if it sold all of its
assets to the buyer and then distributed the sale proceeds to its
shareholders in a complete liquidation.  A deemed asset sale is
generally made at the request of the purchaser, which receives
the beneficial tax consequences of an asset sale, such as a
stepped up basis for the target (i.e., selling) corporation's
assets, that it could not obtain from a straight stock purchase.
For federal tax purposes, the gains realized by the target

corporation are treated as corporate asset sale gains and, in the case of an S corporation, usually passed through to shareholders as taxable asset sale income, rather than as capital gains on stocks, which would be subject to a more favorable tax rate (see 26 CFR 1.338 [h] [10] - 1 [d] [3] - [5]; see also Byron F. Egan, Asset Acquisitions: Assuming and Avoiding Liabilities, 116 Penn St L Rev 913, 928 [2012]).[1]

Further, the sale here was structured in such a way that the purchase price was to be paid in installments pursuant to promissory notes, rather than with cash up-front.[2]  When the installment method is used, taxpayers recognize gains or income in the taxable years in which the payments are actually received, rather than the year the notes representing the installment obligation are received (see 26 USC § 453 [h] [1] [A]).  We note that, in their submissions before Supreme Court, plaintiffs limited their challenge to the retroactive application of the amendments pertaining to the tax treatment of installment obligations under 26 USC § 453 (h) (1) (A), and expressly

---

[1]  It is common that, because of the favorable tax treatment to the purchaser and the unfavorable tax consequences for the seller, a higher sale price is negotiated.

[2] The first installment of approximately $19.5 million, plus interest, was to be paid on March 1, 2007 -- one month after the deemed asset sale and deemed liquidation.  The second installment of $500,000, plus interest, was due on February 1, 2008, along with a contingent "earnout obligation" payment.  TMC passed these installment notes on to plaintiffs.

acknowledged that they "d[id] not challenge those portions of the
2010 Amendments related to 26 U.S.C. § 338(h)(10), which have no
bearing on [plaintiffs'] claims and [were] not even identified in
the Verified Complaint."  That acknowledgment -- along with the
use of the installment method, and the fact that plaintiffs
limited their challenge to retroactive application of the statute
and conceded that prospective application cannot be contested (37
Misc 3d 964, 975 [Sup Ct, NY County 2012]) -- distinguishes this
case from Burton v New York State Dept. of Taxation and Finance
(___ NY3d ___, [decided herewith]), in which the plaintiffs
challenge the prospective application of the amendments to
transactions in which an election has been made under section 338
(h) (10).

On its 2007 tax returns, TMC reported the deemed asset
sale in the same manner as if it had actually sold its assets to
Sanitors and received, in consideration, the installment
obligations.  It used the installment method of accounting to
report its gain arising from the sale -- i.e., TMC did not report
any gain because it had not received any cash payments as of the
date of its deemed liquidation; nor did it recognize any gain
from the distribution of the installment obligations to
plaintiffs in the deemed liquidation.  Plaintiffs, however,
reported a gain on their 2007 federal income tax returns of
approximately $18 million (resulting from the payments received
that year under the first installment obligation) and reported a

gain of approximately $1 million on their 2008 federal income tax returns in connection with additional payments received that year.

In contrast, with respect to their New York income taxes, plaintiffs reported no income or gain derived from the sale of TMC, arguing that, pursuant to various federal tax statutes and regulations, the payments they received from the sale were treated as the proceeds of a sale of stock -- an intangible asset -- the gain from which is not taxable to them by the State under Tax Law § 631 (b) (2). Specifically, plaintiffs relied upon 26 USC § 453 (h) (1) (A), which states that "[i]f, in a liquidation to which [26 USC §] 331 applies, the shareholder receives (in exchange for the shareholder's stock) an installment obligation acquired in respect of a sale or exchange by the corporation . . . then, for purposes of this section, the receipt of payments under such obligation (but not the receipt of such obligation) by the shareholder shall be treated as the receipt of payment for the stock" (emphasis added).[3] In their brief before

_____

[3] Plaintiffs also note that federal regulations provide that the shareholders of a target S corporation subject to a deemed asset sale election generally must treat the liquidation of the corporation following the asset sale "as a distribution in complete liquidation to which section 331 or 332 applies" (26 CFR § 1.338 [h] [10] - 1 [d] [5] [i]). Because 26 USC § 331 (a) states that "[a]mounts received by a shareholder in a distribution in complete liquidation of a corporation shall be treated as in full payment in exchange for the stock"(emphasis added), plaintiffs argue that they must be treated as having sold stock for tax purposes, despite their election to treat the sale of TMC as a deemed asset sale. Plaintiffs do not address that

us, plaintiffs also point to 26 CFR § 1.338 (h) (10) - 1 (d) (8),
which authorizes the use of the installment method under section
453 in connection with deemed asset sales and indicates that S
corporation shareholders are "treated as receiving in the deemed
liquidation the . . . installment obligations . . . <u>in exchange
for their recently purchased stock</u>" (emphasis added).  Thus,
because Tax Law § 631 (b) (2) provides that gain from the sale of
an intangible asset, such as stock, is not taxable to a
nonresident individual, except in circumstances that do not apply
here, plaintiffs maintain that they owed no New York state taxes
on the gain from the sale of TMC to Sanitors, even though the
transaction was deemed to be a sale of assets for federal tax
purposes.

Similar arguments were accepted in 2009 decisions by
the Tax Appeals Tribunal in <u>Matter of Baum</u> (2009 WL 427425, N.Y.
St. Tax Appeals Trib. DTA Nos. 820837 and 820838, Feb. 12, 2009)
and by the Division of Tax Appeals in <u>Matter of Mintz</u> (2009 WL
1657395, N.Y. St. Div. of Tax Appeals DTA Nos. 821807 and 821806,
June 4, 2009).  Those matters concerned, respectively, a deemed
asset sale of an S corporation that did not involve the
installment method, and an actual -- not deemed -- asset sale of

---

portion of 26 CFR § 1.388 (h) (10) - 1 (d) (5) (i) providing
that, where the target of a deemed asset sale is an S
corporation, "shareholders (whether or not they sell their stock)
take their pro rata share of the deemed sale tax consequences
into account under [26 USC §] 1366."

an S corporation in return for an installment payment obligation
governed by 26 USC § 453 (h) (1) (A), which the corporation
distributed to its shareholders in exchange for stock in a
liquidation.  Finding that Mintz and Baum had erroneously
overturned long-standing state policies with respect to taxation
of nonresident S corporation shareholders who sell their interest
pursuant to elections under either section 338 (h) (10) (deemed
asset sales) or 453 (h) (1) (A) (installment sales) of the
Internal Revenue Code, the Legislature amended Tax Law § 632 to
abrogate those determinations (L 2010, ch 57, Part C § 1).  The
Legislature explained that the amendment was "intended to clarify
the concept of federal conformity in the personal income tax and
is necessary to prevent confusion in the preparation of returns,
unintended refunds, and protracted litigation of issues that have
been properly administered up to now" (id.).

Prior to its amendment, Tax Law § 632 mandated only
that, as relevant here:

> "In determining New York source income of a
> nonresident shareholder of an S corporation
> . . . there shall be included only the
> portion derived from or connected with New
> York sources of such shareholder's pro rata
> share of items of S corporation income, loss
> and deduction entering into his federal
> adjusted gross income . . ."

The 2010 amendments clarified, among other things, that if the S
corporation distributed an installment obligation under 26 USC §
453 (h) (1) (A) or made a deemed asset sale election under 26 USC
§ 338 (h) (10), "any gain recognized on the receipt of payments

from the installment obligation . . . [or] on the deemed asset sale for federal income tax purposes will be treated as New York source income" (L 2010, ch 57, Part C § 2).  The amendments were made retroactive to all taxable years beginning on or after January 1, 2007 -- which represent those years for which the statute of limitations for seeking a refund or assessing additional tax was still open (L 2010, ch 57, Part C, § 4, amended L 2010, ch 312, Part B, § 1) -- thus, effectively creating a 3½ year period of retroactivity.

Thereafter, the Department of Taxation and Finance (DTF) audited plaintiffs' 2007 and 2008 state income tax returns and issued a notice of deficiency assessing approximately $775,000 in additional taxes and interest due as a result of the deemed asset sale of TMC.  Plaintiffs then commenced this action, seeking a declaration that the 2010 amendments "retroactively impos[ing] tax on gain recognized on the receipt of payments from installment obligations distributed under [s]ection 453 (h) (1) (A) of the Internal Revenue Code," as applied to plaintiffs, violate the Due Process Clauses of the United States Constitution and New York State Constitution.  Plaintiffs also sought an injunction prohibiting enforcement of Tax Law § 632 against them insofar as the amendments "retroactively impose tax on gain recognized from the receipt of payments on installment obligations distributed under [s]ection 453 (h) (1) (A) of the Code."  Specifically, the complaint alleged that the amendments

"impose[] a tax for the first time on the gain recognized on payments received from installment obligations distributed under [s]ection 453 (h) (1) (A) of the Code, and the 2010 amendments provide an excessive period of retroactivity of [3½] years as applied to [plaintiffs], thereby creating a hard and oppressive effect on the[ir] settled expectations."

The parties cross-moved for summary judgment.  Supreme Court denied plaintiffs' motion, granted defendants' motion, and dismissed the complaint in a thorough decision (37 Misc 3d 964 [Sup Ct, NY County 2012]).  The court determined that the amendments were curative because they were necessary to correct Mintz and Baum, as well as to clarify the concept of federal conformity and prevent confusion and protracted litigation (see id. at 980-982).  Given those curative purposes and, because plaintiffs failed to show reasonable reliance on any relevant pre-amendment law, the court concluded that retroactive application of the statute was justified by rational legislative purposes and was not harsh and oppressive (see id. at 982-987).[4]

The Appellate Division, with one Justice dissenting, reversed, concluding that plaintiffs reasonably relied upon their interpretation of the pre-amendment Tax Law as supporting a view

_____

[4] Supreme Court also dismissed the complaint as against the Governor, which was not challenged on appeal, and denied plaintiffs' request for attorney's fees pursuant to 42 USC § 1988 (b) on the ground that they were not a prevailing party (37 Misc 3d at 987-988).

that installment payments in connection with sales of S
corporations are treated as the receipt of payment for stock and,
given plaintiffs' nonresident status, are not subject to New York
state income tax (117 AD3d 168, 174-176 [2014]).  The majority
further determined that the length of the retroactive period was
excessive because, in that court's view, the amendments were
neither curative nor supported by a compelling public purpose
(see id. at 176-178).  The Appellate Division subsequently
granted defendants' motion for leave to appeal to this Court,
certifying the question of whether its order reversing the
judgment of Supreme Court was properly made.  We now answer that
question in the negative.

                              II.

        Recently, in James Square, we reiterated that "the
retroactivity provisions of a tax statute are not necessarily
unconstitutional and are . . . considered valid if for a short
period . . . because taxation is 'but a way of apportioning the
cost of government among those who in some measure are privileged
to enjoy its benefits and must bear its burdens'" (21 NY3d at
246, quoting Welch v Henry, 305 US 134, 146 [1938]).  We
nevertheless recognized that "[a]n aggreived taxpayer may choose
to make a claim that a retroactive tax violates the Due Process
Clause under the standards in United States v Carlton (512 US 26
[1994]) and our precedent in Replan" (James Square, 21 NY3d at
247-248).  In that regard, a retroactive tax violates due process

only if it is "so harsh and oppressive as to transgress the constitutional limitation" (Replan, 70 NY2d at 455 [internal quotation marks and citation omitted]; see Matter of Varrington Corp. v City of N.Y. Dept. of Fin., 85 NY2d 28, 32 [1995]), and the Supreme Court of the United States has explained that the "harsh and oppressive formulation . . . does not differ from the prohibition against arbitrary and irrational legislation that applies generally to enactments in the sphere of economic policy" (Carlton, 512 US at 30 [internal quotation marks and citation omitted]).  Thus, to make out a due process violation in this context, a plaintiff must show that the retroactive application of a tax is arbitrary and irrational.

While "retroactive legislation does have to meet a burden not faced by legislation that has only future effects[,] . . . that burden is met simply by showing that the retroactive application of the legislation is itself justified by a rational legislative purpose" (id. at 31 [internal quotation marks and citation omitted]).  In analyzing whether a statute is harsh and oppressive -- and, thus, arbitrary and irrational -- this Court uses a balancing-of-equities test first articulated in Replan:

> "The important factors in determining whether a retroactive tax transgresses the constitutional limitation are (1) 'the taxpayer's forewarning of a change in the legislation and the reasonableness of . . . reliance on the old law,' (2) 'the length of the retroactive period,' and (3) 'the public purpose for retroactive application'" (James Square, 21 NY3d at 246, quoting Replan, 70 NY2d at 456).

III.

The inquiry with respect to the first prong "focuses on whether the taxpayer's reliance has been justified under all the circumstances of the case and whether his [or her] expectations as to taxation [have been] <u>unreasonably</u> disappointed" (<u>Replan</u>, 70 NY2d at 456 [internal quotation marks and citation omitted]). There is justifiable reliance only if the taxpayer "obtained a sufficiently certain right to the money prior to the enactment of the new legislation" (<u>id.</u> [internal quotation marks and citation omitted]). The Supreme Court has determined that lack of notice regarding an amendment and reliance upon even a correct reading of an original statute "is insufficient to establish a constitutional violation [because] [t]ax legislation is not a promise, and a taxpayer has no vested right in the Internal Revenue Code" (<u>Carlton</u>, 512 US at 33). In applying that rule, we concluded in <u>James Square</u> that the curative purpose of a statute is relevant to the reasonableness of a taxpayer's reliance. Specifically, we distinguished the "insufficient reliance in . . . <u>Carlton</u>" on the ground that, in <u>Carlton</u>, "the retroactive effect of the tax deduction was to correct an error made by Congress that created a significant and unanticipated revenue loss," while the retroactive amendments in <u>James Square</u> "were not meant to cure an unintended error by the legislature[,] . . . [but] to increase tax receipts for the state budget" (21 NY3d at 248 [internal quotation marks and citation omitted]).

Here, plaintiffs have not shown that their reliance on their own reading of the law, at the time of the transaction in 2007, was reasonable.  Plaintiffs relied upon an untested interpretation of the prior law -- unsupported by any actual experience, practice or professional advice -- that is in conflict with the foundational purposes of S corporations, which permit shareholders to avoid paying corporate taxes by paying the taxes themselves, not to completely avoid paying any state taxes, as plaintiffs seek to do here.  Acceptance of plaintiffs' interpretation of the pre-amendment law would require that we discredit the legislative findings articulated in the amended statute that long-standing policies of DTF required taxpayers to pay proportionate state income taxes on deemed asset sale gains, whether or not they delayed reporting those gains through installment reporting (see L 2010, ch 57, Part C, § 1).  Not only does plaintiffs' reading of the statute contradict the Legislature's express findings, their interpretation is not, in itself, reasonable.  Plaintiffs ask us to accept that the pre-amendment Tax Law did not merely permit the use of installment reporting to delay reporting of gains, but also to transform asset sale earnings -- whether deemed or actual -- into a different form to circumvent the payment of state taxes altogether, based only on a delay in payment, however short. That plaintiffs may have read such a promise into our state Tax Law is insufficient to establish their reasonable reliance

thereupon (see Carlton, 512 US at 33; Varrington, 85 NY2d at 33).

As the trial court noted (37 Misc 3d at 985-986), the instant case is analogous to Varrington, in which this Court held that, when a long-standing policy has been changed by a non-binding ruling, and then the old policy is codified by statute or regulation, the "[r]etroactive tax legislation" does not violate due process (85 NY2d at 32). In Varrington, the taxpayer sought and obtained a refund in 1988 of taxes paid for the years 1984-1986, based upon a 1988 advisory opinion from DTF and a letter ruling by the Department of Finance of the City of New York regarding another taxpayer (see id. at 31). Subsequently, in 1990, the City enacted a regulation codifying its prior, long-standing policy and then sought to recoup the refund (see id. at 31-32, 35).

Although the City was seeking to recover a refund that it paid in 1988, it effectively applied the 1990 regulation retroactively for a period of 6 years, because the refund related to taxes paid for years beginning in 1984. We noted that, contrary to the taxpayers' argument regarding the City's policy prior to 1988, the taxes had been paid in accordance with the City's long-standing taxing policy, and the 1988 advisory opinion and letter represented a significant change from that policy (see id. at 34-35). We, therefore, concluded that the taxpayer's belief that it was entitled to a refund, which it actually obtained, did not amount to reasonable reliance and upheld the

regulation's retroactive application (see id. at 33).  We explained that the taxpayer had "no vested or actionable right in these circumstances to the benefit of a tax statute or regulation . . . in the detrimental reliance sense" (id.).  Because the 1988 letter ruling was a "blip on the screen" representing a significant change from prior tax policy, we held that "there was no cognizable detrimental reliance on the temporarily altered, long-standing tax policy" (id. at 35).

Similarly here, we cannot ignore the legislative findings that Mintz and Baum "erroneously overturned the longstanding policies of" DTF regarding the taxation of S corporations that make elections under either section 338 (h) (10) or 453 (h) (1) (A) of the Internal Revenue Code (L 2010, ch 57, Part C, § 1).  While "[t]he Legislature has no power to declare, retroactively, that an existing statute shall receive a given construction when such a construction is contrary to that which the statute would ordinarily have received" (Matter of Roosevelt Raceway v Monaghan, 9 NY2d 293, 304 [1961], appeal dismissed 368 US 12 [1961]), this Court has long stated that, "when the Legislature does tell us what it meant by a previous act, its subsequent statement of earlier intent is entitled to very great weight" (Matter of Chatlos v McGoldrick, 302 NY 380, 388 [1951]).  Before its amendment, Tax Law § 632 (a) (2) did not clearly prohibit the taxation of gain on installment payments received in connection with corporate asset sales or deemed asset

sales.  Thus, we cannot say that the Legislature has construed the statute in a manner that is contrary to the construction it would ordinarily receive, and we give due consideration to the legislative findings regarding the underlying intent of the statute prior to the 2010 amendments, particularly given that those findings are supported by the unrefuted affidavit of a DTF tax auditor detailing this state's taxation policy.

Even in the absence of express legislative findings, we would conclude that plaintiffs failed to establish that Mintz and Baum correctly reflected the state's pre-amendment policy regarding state taxation of gain derived from installment obligations issued in connection with a deemed asset sale.  In addition to the affidavit of a tax auditor, DTF submitted an internal PowerPoint presentation distributed to new auditors in 2002, which contained an "advisory" that S corporations were attempting to rely upon the installment method to avoid reporting distributions to their shareholders.  The presentation reflects DTF's policy that "subsequent gains" on installment obligations "at the individual level" after the S corporation has liquidated "would be treated as having been distributed from the S corporation, and thus allocable to New York State."  While this PowerPoint presentation was not publicly available, it supports the legislative findings regarding DTF's policy prior to amendment of the statute and also is consistent with DTF's Publication 88 for tax year 2006 -- of which we take judicial

notice as a matter of public record (see Affronti v Crosson, 95
NY2d 713, 720 [2001], cert denied 534 US 826 [2001]) -- which was
published in December 2006, prior to the transaction at issue
(N.Y. State Dept of Taxation & Fin., Publication 88:  General Tax
Information for New York State Nonresidents and Part-Year
Residents [Dec. 2006]).  In Publication 88, DTF instructed
nonresident S corporation shareholders to report "installment
income from a[] [26 USC §] 453 transaction" as New York source
income for income tax purposes (Publication 88, at 11-12); this
is contrary to the subsequent determination in Mintz.

Although plaintiffs contend that the primary issue
presented on this appeal is this State's taxation of payments
from an installment obligation, they submit no relevant authority
-- beyond their own interpretation of the applicable federal and
state statutes -- to support their construction of the Tax Law
with respect to treatment of installment obligations.[5]  Under

---

[5] While plaintiffs do point to various pre-amendment
documents submitted or prepared by DTF as supporting their
construction of the Tax Law, as well as arguably conflicting
language in the 2002 internal PowerPoint presentation regarding
the treatment of deemed asset sales under 26 USC § 338 (h) (10),
they ask us to disregard many of the documents and cases from
other states upon which DTF relies to establish that plaintiffs
had notice of the questionable nature of their current
interpretation of the treatment of such sales under the pre-
amendment statute.  Plaintiffs ask us to disregard these
authorities on the ground that they do not "concern[] state
taxation of payments from an installment obligation under
[s]ection 453 (h) (1) (A) of the [Internal Revenue] Code, which
is the issue presented in this appeal" (emphasis added).  Of
course, this argument applies with equal force to the documents

these circumstances -- as in <u>Varrington</u> -- we conclude that "[t]his record is . . . devoid of evidence to support [plaintiffs'] claim that New York had a long-established policy of not taxing" the gain recognized by nonresident S corporation shareholders in connection with installment payment obligations distributed pursuant to 26 USC § 453 (h) (1) (A) of the Internal Revenue Code; rather, "all of the evidence points in the opposite direction" (85 NY2d at 35).  In any event, plaintiffs have not shown reasonable reliance on their interpretation of the pre-amendment version of Tax Law § 632 (a) (2), given the legislative findings that <u>Mintz</u> and <u>Baum</u> temporarily altered a long-standing, contrary policy that was in effect at the time of the taxable transaction (<u>see</u> <u>id.</u> at 35), as well as the curative purpose of the retroactive amendments -- which expressly "were . . . meant to cure an unintended [administrative] error" (<u>James Square</u>, 21 NY3d at 248).

IV.

The remaining factors of the balancing-of-the-equities test do not require extended discussion; those factors also militate in favor of upholding the retroactive application of the statute.

The second factor is the length of the retroactive period (<u>id.</u> at 246).  The 3½-year retroactive period here was designed to cover open tax years; that is, the period of time

---

regarding deemed asset sales on which plaintiffs rely.

during which S corporation shareholders who engaged in deemed
asset sales or received an installment payment obligation
distributed by the corporation could seek a refund under Mintz
and Baum.  Although this Court has rejected lesser periods (see
id. at 249 [16 months]; Matter of Chrysler Props. v Morris, 23
NY2d 515 [1969] [one month]), it has upheld an effective six-year
period where the statute in question was curative (see
Varrington, 85 NY2d at 31).  Indeed, in James Square, this Court
stated that, while one year is generally not considered
excessive, "longer periods of retroactivity [have also been]
upheld . . . [in] cases [that] concerned curative measures by
legislatures to correct errors" (21 NY3d at 249).  In enacting
the 2010 amendments, the Legislature sought both to correct an
administrative error and to prevent "an unexpected loss of
revenue" (id. at 250); in this regard, the legislative findings
recite that the amendments were necessary to prevent "unintended
refunds," which DTF estimated would amount to many millions of
dollars annually without legislative intervention (L 2010, ch 57,
Part C, § 1).  The Legislature further sought, among other
things, "to prevent confusion in the preparation of returns" by S
corporation purchasers (id.).[6]  Inasmuch as these purposes were

---

[6]  The latter concern was evidently related to the fact that
the Mintz and Baum determinations threatened to deprive
purchasers in a deemed asset sale -- or an asset sale and
liquidation involving installment payments -- of the future tax
benefits arising from a stepped up basis of the assets.  Because
those determinations permitted sellers to treat the transactions

curative and the period of retroactivity was rationally related thereto -- the amendments applied retroactively to only those tax years that remained open -- the second factor favors rejection of plaintiffs' challenge.

The third and final factor to be considered is the public purpose for the retroactive application. In James Square, we recognized that "attempting to correct an error" or preventing "significant and unanticipated revenue loss" were rational public purposes underlying retroactivity (21 NY3d at 248-249 [internal quotation marks and citation omitted]). Here, the Legislature was not acting merely to increase tax receipts, but to prevent unanticipated and unintended consequences arising from erroneous administrative determinations that were contrary to long-standing DTF policies (cf. id. at 250). In our view, the curative, rational public purposes set forth in the legislative findings (L 2010, ch 57, Part C, § 1) are compelling and, thus, this factor also supports upholding the retroactive application of the statute.

In sum, given the Legislature's curative purposes, the extension of retroactive application of the statute to only those tax years for which taxpayers could seek a refund, and the lack of justifiable reliance by plaintiffs on prior law, the

---

as stock sales, it became unclear whether the purchasers could permissibly treat the transactions as asset sales for purposes of New York state income taxation (see Mem in Support, 2010-2011 New York State Executive Budget, Revenue article VII Legislation, at 12-13).

retroactivity period here is not excessive, arbitrary or irrational (see James Square, 21 NY3d at 249).  Accordingly, the order of the Appellate Division should be reversed, with costs, appellants' motion for summary judgment granted, judgment granted declaring that the retroactive application as to plaintiffs of the 2010 amendment to Tax Law § 632 (a) (2) is valid under the Due Process Clauses of the United States and New York Constitutions, and the certified question answered in the negative.

*  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *

Order reversed, with costs, appellants' motion for summary judgment granted, judgment granted declaring that the retroactive application as to plaintiffs of the 2010 amendment to Tax Law § 632(a)(2) is valid under the Due Process Clauses of the United States and New York Constitutions, and certified question answered in the negative.  Opinion by Judge Stein.  Chief Judge Lippman and Judges Read, Pigott, Rivera, Abdus-Salaam and Fahey concur.

Decided July 1, 2015